THE BOARD OF SUPERVISORS OF TOMPKINS COUNTY, Respondent, *v.* GEORGE H. BRISTOL et al., Appellants.

A county treasurer received payment upon a mortgage belonging to an infant which he canceled and discharged of record, without order of the court authorizing such discharge, as required by statute. (2 R. S. 328, § 70.) In his next annual official report the treasurer specified the mortgage as still on hand and unpaid ; he was re-elected and gave a new bond; he did not reinvest the funds, or pay over the moneys to his successor. In an action upon the bond given for his first term, *held*, the evidence

justified a finding that the moneys received were converted by the treasurer to his own use, during his first term, and authorized a judgment against the sureties.

Also *held*, that the condition of the bond, that the treasurer should faithfully discharge his duties, involved the obligation of making correct reports, conforming to the requirements of the statute (Chap. 386, Laws of 1859, § 1), and the failure so to do was a breach of this condition.

Also *held*, that the official report of the treasurer was competent evidence against the sureties.

Also *held*, that the action on the bond was properly brought in the name of the board of supervisors of the county, for the benefit of the infant.

After proof had been given, without objection, as to negotiations by the treasurer with a third person, for a worthless mortgage, with a view of substituting it in the place of the funds converted, evidence of statements made by him to such third person was received, under objection. *Held* no error; that the evidence was competent as part of the *res gestæ*, and as showing that the transaction was not in good faith.

(Argued May 1, 1885; decided June 9, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 22, 1884, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was upon a county treasurer's bond. The facts are sufficiently stated in the opinion.

*S. D. Halliday* for appellants. Acts of misconduct by Bristol, during his second term, could not be proved to show a particular misconduct by him during his first term; nor could his mere written declaration be proof of that fact against his sureties. (*Tenth Nat. Bk.* v. *Darragh,* 1 Hun, 111.) The report, at most, is a declaration of the principal made subsequent to the act complained of, and not a part of the *res gestæ*, and could not be competent evidence against the sureties of his former term. (*Hatch* v. *Elkins,* 65 N. Y. 489; 1 Greenl. on Ev., § 187; *Sup'rs of Tompkins* v. *Bristol,* 15 Hun, 116, 118; *Bissell* v. *Saxton,* 66 N. Y. 55; *Sup'rs of Monroe Co.* v. *Clark,* 25 Hun, 286, 287; 4 Sandf. Ch. 51.)

*Perry G. Ellsworth* for respondent. The investment being unauthorized, the *cestui que trust* can reject it and demand his

money, even if well invested. (*King* v. *Talbot*, 40 N. Y. 76; Perry on Trusts, § 460; *Ackerman* v. *Emott*, 4 Barb. 626–634.) If the investment had been authorized and made by the county treasurer on inadequate or worthless securities, the *cestui que trust* may recover their amount by suit on official bond. (Laws of 1879, chap. 447, § 2.) In the absence of any direction in the decree, or in the rules of the court, it was a clear violation of law, and his duty, for Bristol to invest the funds in any thing but stocks of United States, or State of New York. (*Ackerman* v. *Emott*, 4 Barb. 626; *Robinson* v. *McGregor*, 16 id. 534.) Bristol's reports are evidence against him and his sureties. (*Bissell* v. *Hamblin*, 6 Duer, 512; *Bissell* v. *Saxton*, 66 N. Y. 55; *Sup'rs of Tompkins Co.* v. *Bristol*, 15 Hun, 118; *People* v. *Pease*, 27 N. Y. 72; 1 Greenl. on Ev., §§ 483, 491, 498; 2 Phillips on Ev. 243; *Cauley* v. *People*, 75 Ill. 249; *Thornton* v. *Compton*, 18 N. H. 20; Laws of 1859, chap. 386; 3 R. S. [Edm. ed.] 341.) Every intendment, every inference, is indulged in against a party having evidence in his possession and refusing to produce it. (*Wylde* v. *N. R. R. Co. of N. J.*, 53 N. Y. 164; *Barber* v. *Lyon*, 22 Barb. 622; *Whitney* v. *Sterling*, 14 Johns. 217; *Jackson* v. *McVey*, 18 id. 334; Cow. & Hill's Notes, 1171.)

RUGER, Ch. J. George H. Bristol, one of the defendants, was elected treasurer of Tompkins county for a term commencing January 1, 1870, and terminating January 1, 1873. Before entering upon the duties of his office, he executed with the other defendants, as sureties, the bond required by the statute, conditioned that he should "faithfully execute the duties of his office, and shall pay according to law all moneys which shall come to his hands as treasurer of the said county of Tompkins, and render a just and true account thereof to the board of supervisors, or to the comptroller of the State when thereunto required." The action is brought against the treasurer, and his sureties, to recover damages, for an alleged breach in the condition of the bond. Upon assuming possession of the office in January, 1870, Bristol received, among other funds

from his predecessor, certain moneys belonging to Charles Cowen, an infant, realized from a sale of real estate taking place under a judgment in partition, according to the provisions of the statute.   Such moneys then amounted to the sum of $775.65, and were invested as follows: $317.19 in a mortgage upon unincumbered real estate given by Charles W. Smith; $450 in the 5-20 government bonds of 1867, and $108.46 in cash.   The care of such moneys was, previous to the Constitution of 1846, given to the register or clerk in chancery; but by chapter 280, section 71 of the Laws of 1847, it was transferred to the clerk of the Court of Appeals, and by chapter 277, Laws of 1848, to the county treasurers, who were also thereby subjected to all of the provisions of law applicable thereto.   The duties pertaining to the management and care of moneys received from the sale of infant's real estate in partition are the subject of careful and stringent provisions in the statutes and rules of court, and, so far as they are material in this case, may be concisely summarized as follows: When received by such treasurer he is required to invest them either in State or United States bonds, or in mortgages upon unincumbered real estate worth twice the amount of the sum invested.   (2 R. S. [Edm. ed.] 338, § 70; Chy. Court Rules, 180.)   While waiting for the opportunity of making authorized investments, he is required to deposit such moneys in a bank to be designated by the court.   (Sup. Ct. Rules of 1871, 80; Present Rules, 68.)   After the investment has been made no security taken for it can be discharged, transferred, or impaired by any act of the treasurer without the order of the court entered in its minutes.   (2 R. S. [Edm. ed.] 338, § 70.)   Such treasurer is required to make and file in the county clerk's office within ten days after the 1st day of July in each and every year a report containing a statement of all moneys in his hands belonging to infants, and for whom invested, with a particular description of the securities held therefor and the amount due thereon, and special and detailed information as to whether they are invested or not, and if not, why, and how long they have remained uninvested, and other

information relating thereto, which report is required to be verified by the treasurer. (§ 1, chap. 386, Laws of 1859.) For a neglect to make such report a penalty of $500 is imposed, and the district attorney of the county is directed to prosecute for the same. (§§ 2 and 4, same act.)

The undisputed evidence in the case shows that Bristol was elected treasurer in the fall of 1872 for a second term, running from January 1, 1873, to January 1, 1876, when he was succeeded in office by one Van Voorhees; that he did not deliver to his successor the mortgage or securities in which said infant's moneys had been invested, and that said infant had never been able to obtain satisfaction from Bristol for the moneys represented therein; that said mortgage was paid to Bristol on the 17th day of August, 1871, by the mortgagor, and was then canceled and discharged of record, although no order of the court authorizing such cancellation was obtained by the treasurer. The official report of the treasurer for the year 1872 describes these moneys as still remaining invested in a mortgage for $317.19, and negatives the fact that any part of the principal sum had been paid during the year, or that there had been any change in the investment. It does not appear in the case that these moneys had ever been reinvested after their receipt in 1871.

The referee has found upon this evidence that the amount of the Smith mortgage was converted by Bristol to his own use during his first term of office, and that the defendants are liable in this action for that sum. An exception to this finding and one raising the same question taken to the refusal of the referee to nonsuit the plaintiffs at the close of their evidence constitute, aside from those taken to certain rulings upon the admissibility of evidence, the grounds of complaint on this appeal.

It is claimed by the appellants that no sufficient evidence was given that the moneys paid upon the Smith mortgage were converted to his own use by Bristol during his first term of office, and that his sureties are not liable for any other conversion. It is of course true that the

sureties on a treasurer's bond are liable only for such dereliction of duty as occurs during the term of office covered by their bond; but we are of the opinion that the finding that the conversion in question, occurred during that time was warranted by the evidence. The violation of duty committed by the treasurer in canceling the Smith mortgage without an order of the court therefor (*Farmers' Loan & Trust Co.* v. *Walworth,* 1 N. Y. 433), together with the falsity of his implied statement that it had not been paid during the year preceding and still remained an outstanding security for the debt, furnished presumptive evidence of an existing fraudulent intent on his part, and, in the absence of explanatory evidence, justified the conclusion that the motive for such conduct must have existed in an accomplished misappropriation by the treasurer of the moneys in question. It is quite improbable that Bristol would voluntarily incur the penalty of making a false report, and the punishment following the commission of the crime of perjury, if there was no motive for so doing. If he then had these moneys on hand there was no reason for not reporting that fact as a subsequent embezzlement, if it had been contemplated, was not facilitated by a false report. It is a legitimate inference from the facts stated, that the embezzlement had already taken place and that the false report was made to cover or conceal an offense already committed. It is in accordance with the teachings of human experience that the commission of one crime often leads to the perpetration of another, in an effort to escape the consequences of the original transgression. The undisputed evidence that these moneys were in fact at some time embezzled and that the treasurer commenced making false reports in regard to them in 1872, affords a strong presumption that they were actually appropriated by him prior thereto. The evidence received for the purpose of raising this presumption was unobjectionable.

The undertaking of sureties on a treasurer's official bond is that he shall faithfully perform his duties, and this involves the obligation of making correct reports, conforming to the requirements of the statute, as well as the payment of funds

in his custody.   In an action against sureties for an alleged breach of such a bond, the official reports made during the term covered by them are a part of the *res gestæ* and competent evidence, not only of the facts affirmatively appearing therein, but also of such other facts and circumstances bearing upon the liability of the sureties as are legitimately inferable therefrom. (*Fenner* v. *Lewis,* 10 Johns. 38 ; *Douglass* v. *Howland,* 24 Wend. 36 ; 1 Greenl. Ev., § 187.)   This arises not alone from the principle authorizing the reception of such evidence as declarations of the principal, but as being an official act performed under the direction of the statute in pursuance of the stipulations contained in the bond whereby the sureties have assumed the liability of any neglect in the discharge of the duty. (*Goss* v. *Watlinton,* 7 E. C. L. 380 ; *Whitnash* v. *George,* 15 id. 295 ; *Middleton* v. *Melton,* 10 B. & C. 317.) Although the fact of the death of the person making the entries appears in the cited cases, it is not conceived that this was a controlling circumstance, inasmuch as the principle upon which they were mainly determined, was the obligation assumed by the sureties in their bond for a proper performance by the officer of the duty of making such entries.   The competency of such evidence in an action against sureties, even during the life-time of the officer as to the amount of funds in his hands, has been decided in this court.   It was, however, also held, that such proof was not conclusive but was open to explanation and contradiction by the sureties. (*Bissell* v. *Saxton,* 66 N. Y. 55. See, also, *U. S.* v. *Boyd,* 5 How. [U. S.] 29.)

A false report by the treasurer constitutes a violation of official duty and a breach of his bond rendering the sureties liable to the parties injured for such damages as are the legitimate consequence of the wrongful act. It is, therefore, properly receivable in evidence in an action against the sureties for a breach, not only for the purpose of showing such breach, but also as reflecting upon and illustrating the object and motives of other official acts of the treasurer, which are properly the subject of investigation.

The inquiry here is, whether Bristol in fact embezzled the

funds in question, and if so, when, and upon that issue his official acts and declarations concerning these funds during his first term are a part of the *res gestæ*, and competent evidence of any fact which they tend to establish.

Several reports made by Bristol after the expiration of his first term of office, and showing repeated statements similar in effect to those contained in the report of 1872, were received in evidence by the referee against the defendants' objections and under exceptions. We do not consider it necessary to pass upon the question of the admissibility of this evidence, as it was cumulative only, and in the view we take of the case wholly immaterial. The first erroneous report was just as conclusive upon the rights of the parties as any number could be, and the admission as evidence of the subsequent reports could not increase the force of the first, or do the defendants any possible harm.

Several exceptions were also taken to the admission of certain statements made to one Harry Cowen, by Bristol, at the time of obtaining a certain worthless mortgage for $767.19, with a view of substituting it for the funds of the infant Cowen, in the hands of the treasurer. These statements were made during the negotiations preceding the giving of the mortgage, and tended to show that it was given without consideration, and for an improper purpose. They were clearly *res gestæ*, and competent for the purpose of showing that the mortgage was not taken in good faith, and as a legal investment of the funds in controversy. The defendants might very properly have objected to all of the evidence affecting the mortgage in question, but after allowing it to be proved, they could not successfully exclude the evidence offered, showing that it was not such a security as the treasurer was authorized by law to take. At the period of these exceptions the case stood on the same footing as though the proof of the mortgage had been made by the defendants, and the burden had been cast upon the plaintiff of showing why it was not a proper security for the moneys in question. The evidence objected to tended to prove this fact, and was therefore competent.

This action was properly brought in the name of the board of supervisors, and the recovery therein inures to the person for whose benefit it is prosecuted. (§ 2, chap. 447, Laws of 1879 ; Code of Civ. Pro., § 1926.)

No other material exceptions appear in the case, and the judgment should, therefore, be affirmed.

All concur, except FINCH, J., not sitting.

Judgment affirmed.