CITY OF PHILIPSBURG, APPELLANT, *v.* DEGENHART ET AL., RESPONDENTS.

(No. 1,854.)

(Submitted April 18, 1904. Decided May 5, 1904.)

*Municipal Corporations — Officers — Bonds — Conditions —*

*Money Received by City Treasurer—Illegality of Collection —Failure to Account—Liability of Sureties—Actions—Evidence—Reports of Treasurer.*

1. The official bond of a city treasurer, as contemplated by the Political Code, is within the purview of Article IX thereof, and must be conditioned in accordance with Section 1057.
2. A city treasurer receipted for moneys collected by officers and agents of the city from gambling houses and brothels, and also included such receipts in his monthly reports to the council. *Held*, that the money so received was received by the treasurer by virtue of his office, and his failure to pay over the money to his successor in office was a breach of his official bond, for which his sureties were liable, though the money was collected illegally and without authority.
3. Reports of a city treasurer to the city council of moneys received and disbursed during the month, which he is required to make by Political Code, Section 4788, may be given in evidence against the sureties on his official bond, and are *prima facie* true, and, when not contradicted by the sureties, are binding on them.

*Appeal from District Court, Granite County; Welling Napton, Judge.*

Action by the city of Philipsburg against L. C. Degenhart and others. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

*Mr. Wingfield L. Brown,* and *Mr. W. E. Moore,* for Appellant.

*Messrs. McConnell & McConnell,* and *Mr. D. M. Durfee,* for Respondents.

Only moneys that come to the city or town from taxation or other legal sources is the city treasurer bound to receive, and only such moneys as he does receive from these legal sources are the sureties bound to see that he accounts for. (Political Code, Sec. 4788, Subd. 1; Century Digest, Vol. 8, Sec. 38, column 49 ; 24 Am. & Eng. Ency. of Law, 879 ; *Mason* v. *Commissioners,* 104 Ga. 35 ; *State* v. *Bonner,* 72 Mo. 387 ; *U. S.* v. *Morgan,* 28 Fed. 48 ; *U. S.* v. *Adams,* 24th Fed. 348 ; *U. S.* v. *White,* 4th Wash. (U. S.) 414 ; *People* v. *Pennock,* 60 N. Y. 421 ; *Ward* v. *Stahl,* 81 N. Y. 406 ; *State* v. *Rollins,* 29 Mo. 267 ; *San Jose*

v. *Welch,* 65 Cal. 358; *People* v. *Lucas,* 93 N. Y. 855; *People* v. *Hilton,* 36 Fed. 172; *Governor* v. *Perrine,* 23 Ala. 807; *State* v. *Brown,* 33 N. C. 141; *Commonwealth* v. *Cole,* 7 B. Monroe (Ky.), 250, 46 Am. Dec. 515; *Eaton* v. *Kelly,* 72 N. C. 110; *Cornell* v. *People,* 37 Ill. App. 490; *Gerber* v. *Ackley,* 32 Wis. 233, 37 Wis. 43; *State* v. *McDonough,* 9 Mo. App. 63; *Barnes* v. *Whitaker,* 45 Wis. 204; *City of Lowell* v. *Parker,* 43 Am. Dec. 437; *Lammon* v. *Fusier,* 111 U. S. 17; 2 Am. & Eng. Ency. of Law, p. 466; McLain on Criminal Law, Sec. 648; *State* v. *Newton,* 26 Ohio St. 265.)

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court.

This is an appeal from a judgment and order overruling a motion for a new trial. The action was brought by the city against the sureties upon the official bond of Charles A. Wallender, treasurer of the city of Philipsburg, to recover for a deficiency in his account as such city treasurer. The court found that "the shortage of C. W. Wallender, defendant, is the sum of $1,284.21." Nevertheless judgment was entered for defendants. The official bond sued upon is attached to the complaint on file, and is conditioned as follows: "Now, therefore, if the said Charles A. Wallender shall well, truly and faithfully perform all official duties now required of him by law, and also such additional duties as may be imposed upon him by any law of the state, and if he shall account for and pay over and deliver to the person or officer entitled to receive the same, all moneys or other property that may come into his hands as such city treasurer, then this obligation to be void and of no effect; otherwise to remain in full force and virtue."

The defense set up in the answer was, briefly, that the officers and agents of the city collected money from various gambling houses and houses of prostitution, which they had no right to collect, and therefore the city had no right to the money received therefrom, and that the conversion and embezzlement of the

moneys alleged in the complaint "was only the conversion of money not belonging to the city of Philipsburg, but received by the illegal means above set forth." The court found that the moneys thus collected by the city officials amounted to the sum of $1,072.53.

The condition of the bond is substantially within the provisions of Section 1057 of the Political Code, as amended (Laws of 1899, p. 79). Under the terms of this bond, the city treasurer and his sureties were liable for all moneys that came into his hands as such city treasurer which he did not pay over "to the person or officer entitled to receive the same." The record discloses the election of his successor in office, his demand on Wallender for the money, and his failure to pay over the sum for which suit is brought.

Counsel for respondent seems to be of the impression, as shown by his brief, and authorities cited therein, that the statutory bond of a city treasurer can be conditioned only that he faithfully perform the duties of his office. We gather this from the citation of Subdivision 1 of Section 4788 of the Political Code, and of cases which uniformly hold that, where a bond is given for the performance of the duties of an office only, its language cannot be extended. In some way counsel seems to have overlooked the fact that we have a statute entitled "Bonds of Officers" (Article IX, Sec. 1050 *et seq.,* Political Code). This Article contemplates all official bonds. That it is intended to include official bonds of city treasurers seems apparent from Section 1075, which provides: "Any surety on the official bond of a city, town, township, county or state officer, may be relieved from liabilities thereon afterwards accruing, by complying with the provisions of the three sections following."

We have searched our statutes diligently, but, aside from the provisions of this Article, we find none prescribing what shall be the condition of an official bond of a city treasurer. All legislation seems to have been enacted upon the theory that this Article covers such bonds; for instance, Section 4761 of the Political Code makes it the duty of the city council to provide

accountability of all officers "by requiring from them sufficient security for the faithful performance of their duties," but does not prescribe what the conditions of the bond shall be. Section 4762 of the Political Code provides that "the city treasurer * * * and such other city officers as the council by ordinance may require, must give official bonds in such sums and securities as the ordinance may prescribe." Section 4758 of the Political Code provides that "each officer of a city or town must take the oath of office, and such as may be required to give bonds, file the same, duly approved, within ten days after receiving notice of his election or appointment." Section 4788 of the Political Code prescribes certain statutory duties of a city treasurer.

A duty devolves upon all officials to turn over and account for all moneys in their hands, which they have received in their official capacity, to their successor in office. This duty is so plain that it needs no statutory affirmance. If an officer receives money by virtue of his office, and as such official, such money, so far as the officer is concerned, belongs to the municipality of which he is an officer, and not to him. His duties as to money received by him as treasurer are exactly the same as his duties regarding the office furniture and supplies in his office. That this duty exists and is recognized by the legislature is apparent from the provisions of Section 1057, *supra,* which prescribes the conditions of all official bonds: "The condition of an official bond must be that the principal will well, truly and faithfully perform all official duties then required of him by law, and also all such additional duties as may be imposed on him by any law of the state, and that he will account for and pay over and deliver to the person or officer entitled to receive the same, all moneys or other property that may come into his hands as such officer. Such bond must be signed by the principal and at least two sureties." This section was amended by the Laws of 1899, p. 79, by inserting after the word "state" the words "subsequently enacted."

We therefore have no hesitancy in saying that the official bond of a city treasurer, as contemplated by the Political Code, comes

clearly within the purview of Article IX, *supra,* and must be conditioned in accordance with Section 1057.

Article III, in which Section 4788 is found, is entitled "Executive Powers," and does not assume to say anything about official bonds, but prescribes certain duties of officials of a city. That other duties may exist is apparent from Section 4740 of the Political Code.

The only question, therefore, involved in this case, as to the liability of the sureties, is whether or not the city treasurer received the money for which suit is brought in his official capacity. Section 4788 of the Political Code provides that it is the duty of the treasurer, among other things (Subdivision 3): "To present on the first Monday of each month to the council a full and detailed statement of the amounts of money belonging to the city or town received by him, and by him disbursed, during the preceding month, and the state of each particular fund, which statement must be verified by his oath." Subdivision 6 provides: "To give every person paying to him money as treasurer, a receipt therefor, specifying the date of payment, the amount, and for what paid." The record discloses the receipts of the treasurer for the moneys sought to be recovered, as required by Subdivision 6, *supra,* thus showing that he received this money as city treasurer. The record also discloses the monthly reports of the treasurer, properly verified by him, stating that he held this money as city treasurer. These reports comply with the requirements of Subdivision 3, *supra.*

Under all the testimony introduced at the trial, and the finding of the court, it is conclusive that the money for which the suit was brought was received by the city treasurer by virtue of his office, and not otherwise. The sureties on the official bond, who are defendants in this case, have not sought to contradict any of these receipts or reports, and they are therefore bound thereby.

Reports of an officer which are required by law may be given in evidence against the sureties on his official bond, and are *prima facie* true. (*Board of Supervisors* v. *Bristol,* 99 N. Y.

316, 1 N. E. 878; *State* v. *Smith,* 26 Mo. 226, 72 Am. Dec. 204; *Van Sickel* v. *County of Buffalo,* 13 Neb. 103, 13 N. W. 19, 42 Am. Rep. 753; *Bissell* v. *Saxton,* 66 N. Y. 55; *Broad* v. *City of Paris,* 66 Tex. 119, 18 S. W. 342; *Mahon* v. *Kinney County* (Tex. Civ. App.), 28 S. W. 1024; Mechem on Public Officers, Sec. 289.)

We agree with the position taken by counsel for appellant that Wallender, the city treasurer, having received and receipted for all the moneys in question *as city treasurer,* and having acknowledged the receipt and the holding of said money *as moneys of the city,* by his monthly reports and accounts to the city, his failure to pay over such moneys to his successor in office is a breach of the condition of his bond, and that the sureties thereon are liable therefor.

The conduct of the city officials in the collection of this money is reprehensible, and should not be upheld. By the method recognized and practiced in the city of Philipsburg, the statutes of the state of Montana were allowed to be constantly violated. There is no showing in the record but that the money thus collected was paid voluntarily, and therefore could not be recovered from the city by the parties paying the same. Although illegally collected, it was therefore the money of the city of Philipsburg. It was paid to the treasurer, and he embezzled or converted the same. The sureties on his official bond contracted with the city against such conduct of the treasurer. It does not lie in their mouths to say that the money was paid illegally and therefore does not belong to the city, or that it was so tainted with corruption that it would be violative of public policy to allow the recovery against the treasurer's bond. The mere fact that the money was collected without authority can make no difference in the liability of the sureties upon the bond here involved. This question has been practically decided in the cases of *Smith* v. *Lovell,* 2 Mont. 332, and *Commissioners of Meagher County* v. *Gardner,* 18 Mont. 110, 44 Pac. 407.

Mechem on Public Officers, Section 295, uses the following language: "An officer who has received money for and on ac-

count of his principal cannot, in general, when called upon to pay it over, defend on the ground that it was money which his principal had no right to obtain, procure or receive. It is held that his sureties are equally estopped." See, also, *Sutherland v. Carr,* 85 N. Y. 105; *Wylie v. Gallagher,* 46 Pa. St. 205; *Boehmer v. Schuylkill County,* 46 Pa. St. 452; *Heppe v. Johnson,* 73 Cal. 265, 14 Pac. 833; *Detroit Savings Bank v. Ziegler,* 49 Mich. 157, 13 N. W. 496, 43 Am. St. Rep. 456; *Galbraith v. Gaines,* 10 Lea, 568.

We advise that the judgment and order appealed from be reversed, and the case remanded, with instructions to the court below to render judgment in favor of appellant against the defendants for the sum of $1,284.21.

* PER CURIAM.—For the reasons stated in the foregoing opinion the judgment and order appealed from are reversed, and the case is remanded, with instructions to the court below to render judgment in favor of appellant against the defendants for the sum of $1,284.21.

MR. JUSTICE MILBURN: I concur. It might be inferred, from the statement that "there is no showing in the record but that the money thus collected was paid voluntarily," that money paid by inmates of houses of ill fame and other violators of the law to city officials in order to prevent prosecution is sometimes paid voluntarily.

I do not believe that such payments, exacted from lawbreakers by officers who thus become themselves *participes criminis,* ever are or ever can be voluntarily made.