THE CITY OF ROUNDUP, a Municipal Corporation, Plaintiff and Appellant, v. FRANK E. LIEBETRAU, American Surety Company, a Corporation, et al., Defendants and Respondents.

No. 9514.

Submitted November 18, 1957. Decided February 14, 1958.

Rehearing Denied August 6, 1958.

327 Pac. (2d) 810.

W. S. Mather, Roundup, Ralph J. Anderson and Stanley P. Sorenson, Helena, W. S. Mather, Roundup, and Ralph J. Anderson, Helena, argued orally, for appellant.

DeKalb, Dockery & Symmes, Lewistown, for respondent. Weymouth D. Symmes, Billings and Raymond E. Dockery, Lewistown argued orally.

MR. JUSTICE CASTLES:

This is an appeal by the plaintiff City of Roundup, hereinafter referred to as the City, from a judgment dismissing the complaint with prejudice and granting to the defendants their costs.

This case arises out of the operation by the appellant City of Roundup of two war housing projects under lease from the Federal Government. The action was originally commenced against Chester L. Waltermire, Frank Liebetrau, American Surety Company, a corporation and the Public Housing Administration, an agency of the United States of America. The City had commenced the operation of these housing projects early in the year 1944 at which time Waltermire was mayor and Liebetrau was commissioner of public works for the City. The operation of the housing projects was turned over to Waltermire. During the period from approximately May 10, 1944, until April of 1951, Waltermire paid to himself and to the defendant Liebetrau from the receipts of the housing projects the total sum of $18,850 purportedly as salaries for managing and operating the projects, half of this amount going to each of the defendants, Waltermire and Liebetrau. The action was brought by the City upon the theory that these funds were public funds of the City of Roundup which had been wrongfully converted by the defendants Waltermire and Liebetrau. The American Surety Company is the surety upon fidelity bonds of the defendant Liebetrau.

The Public Housing Administration was named as a defendant to determine whether or not such defendant had any claim to these funds. On August 19, 1952, by letter from its field office directors, the Public Housing Administration disclaimed any interest in these funds and the plaintiff moved to dismiss this action as against that defendant. The motion was granted. During the trial of the action counsel for the plaintiff moved for the dismissal of the same as to the defendant Waltermire only, with prejudice. Thereafter the trial continued as against the defendants and respondents Liebetrau and the American Surety Company.

After both sides had rested and the case had been submitted on August 11, 1954, the defendants and respondents, on August 14, 1954, moved the court for an order permitting them to reopen the case for the purpose of receiving additional evidence.

After hearing thereon this motion was granted. The additional evidence was presented by stipulation. Thereafter, and on October 6, 1954, the court made findings of fact and conclusions of law to the effect that the dismissal of the action as against the defendant Waltermire had operated to release the defendants and respondents. Pursuant to these findings and conclusions the court made its judgment of dismissal from which this appeal is taken.

In its complaint the City alleged its leasing of the war housing projects from the Public Housing Administration in August 1944; that from May 1944, to May of 1951, the defendant Waltermire was Mayor of the City; that the defendant Waltermire was delegated the operation and management of the projects as Mayor, by the city council, and that he managed the operation during his term; that during the same period until June of 1950, the defendant Liebetrau was the commissioner of public works of the City and upon information and belief that Liebetrau as said commissioner aided and assisted Waltermire with the operation and management of the projects; that a new mayor was elected in April of 1951 and as a result it became necessary to turn over the operation of the projects to some person other than Waltermire; that on April 9, 1951, Waltermire made a report to the city council regarding the operation of the projects; that thereafter the city clerk made a demand on Waltermire for a full and complete accounting of his management of the projects, which demand was ignored; that on or about September 7, 1951, the City Attorney made a written demand on Waltermire for a full accounting; that Waltermire made a written statement purporting to be an account of his management of the projects; that shown thereon as an item of disbursement was the sum of $18,850 paid to himself and the defendant commissioner of public works, Liebetrau, as salaries for the management of the project; that during all of said period the defendants Waltermire and Liebetrau managed the projects and they were paid regular salaries as mayor and commissioner of public works, which salaries were fixed by law; that the City never authorized nor di-

rected the defendants Waltermire and Liebetrau to retain any sum of the receipts of the housing project as salaries or for any other reason; that Waltermire and Liebetrau were without lawful right or authority to retain and withhold the $18,850 or any sum as salaries; that the said sum constituted public funds rightfully belonging to the City which came into the hands of Waltermire and Liebetrau as officers and trustees of the City; that it was their duty as such officers to make a full and complete accounting of all funds which might come into their hands as such officers; that Waltermire and Liebetrau fraudulently, knowingly and unlawfully failed to make an accounting to the City of the sum of $18,850 and falsely, fraudulently and unlawfully converted the said sum to their own use; that because of the failure to account and by reason of the fact that the parties to the lease contemplated that any funds received from the operation of the projects over and above the lessor's rentals should be expended in maintenance and upkeep, the city council had no reason to believe or suspect that the mayor and commissioner of public works were withholding funds received from the operation of the projects; that by reason of these facts the fraudulent acts of the defendants Waltermire and Liebetrau were concealed from and not discovered by the City until the election of a new Mayor made it necessary that the operation of the projects be allocated to some person other than the defendant Waltermire; and that the City made demand upon the defendants Waltermire and Liebetrau for the sum of $18,850.

The complaint also alleged that Liebetrau was bonded by the defendant American Surety Company from time to time, and that it is liable in the sum of $8,000 by reason of the fraudulent acts of Liebetrau.

The answers of the defendants Liebetrau and American Surety Company admitted the employment status of Waltermire and Liebetrau for the periods alleged and admitted the operation of the project by Liebetrau. Essentially all other matters were denied.

In addition, affirmative defenses were pleaded in the answer. The first one was to the effect that under the terms of the lease, the Public Housing Administration was the real party in interest and that the City was not.

The second affirmative defense was that the City authorized Waltermire to pay Liebetrau for his services in connection with the project in addition to his salary as commissioner of public works, and that Waltermire did so employ Liebetrau, that the sums paid were no more than the reasonable value of the services performed by Liebetrau, and that the City acquiesced in and ratified payments made to him.

The third affirmative defense was a plea of R.C.M. 1947, section 93-2605, being the three year statute of limitations.

The fourth and fifth affirmative defenses were pleas of R.C.M. 1947, sections 93-2601, 93-2604 and 93-2607, being statutes of limitations.

The trial court made findings of fact and conclusions of law to the effect that the dismissal of the action as against the defendant Waltermire had operated to release the defendants and respondents. Pursuant thereto, a judgment of dismissal was entered from which this appeal is taken. The court did not consider the merits of the action but ruled that the dismissal acted as a retraxit.

Error is specified in two parts by the appellant City. The first part poses the question as to whether the dismissal as to one defendant was a "retraxit" that extinguished all claims that the City might have against the joint tort-feasor.

The dismissal was made as follows:

"Mr. Anderson: If the court please, at this time I desire to move the dismissal as to the defendant Waltermire only, with prejudice.

"The Court: Let the record show the motion is granted."

The dismissal was made pursuant to a covenant not to sue. The covenant not to sue was received by the trial court as Exhibit "B" and the minutes of a special meeting of the city council of the plaintiff City authorizing the officers of the City

to execute a covenant not to sue upon payment of Waltermire of $5,000 was received by the trial court as Exhibit "A". These instruments will be set out in part:

*Exhibit "B"*

"Covenant not to sue.

"Whereas, * * * the City * * * and the said Chester L. Waltermire, having negotiated each with the other looking toward a compromise of the claims of the said City * * * against said Chester L. Waltermire, and have determined upon an amount to be paid to effect such compromise, and

"Whereas, Lillian M. Gildroy, * * * Mayor of the City * * * and George W. Haling, * * * City Clerk * * * having been duly and regularly authorized by the City Council * * * pursuant to proceedings held and conducted in a lawful meeting of said City Council to execute this instrument on behalf of said City * * *, and to thereby compromise all of said claims of said City * * * against said Chester L. Waltermire.

"Now Therefore, in consideration of the sum of Five Thousand and no/100 ($5,000.00) Dollars to the undersigned in hand paid the City * * * that all of its claims of whatsoever kind or nature against the said Chester L. Waltermire, are hereby discharged and that the said city * * * will not hereafter institute or prosecute or suffer to be instituted or prosecuted, any suit or action to recover of or from the said Chester L. Waltermire, damages or compensation of any kind, character or description by reason of any moneys or other property alleged by the City * * * to have been improperly withheld from said City by the said Chester L. Waltermire or improperly received by the said Chester L. Waltermire in connection with his operation and management of said War Housing Projects, or otherwise, it being the express intention of the undersigned that said covenant not to sue as herein expressed extends to any and all suits and actions, whether accrued, or accruing or hereafter to accrue, for, because of, on account of, or in any manner connected with or growing out of the matters

herein set forth; but in this connection it is expressly understood and agreed that the acceptance of the payment aforesaid is made with the express reservation to the undersigned, the City * * * of the right to prosecute any claims which it has or may assert against Frank E. Liebetrau because of any moneys or property paid to or received by the said Frank E. Liebetrau in connection with the operation of said War Housing Projects above referred to.

"It is understood that this covenant concerns a matter of disputed liability, and that the making hereof does not constitute admission of liability of said Chester L. Waltermire but that, on the contrary, the said Chester L. Waltermire expressly denies all liability to the City of Roundup, Montana, by reason of the matters herein set forth."

*Exhibit "A"*

"Minutes of a Special Meeting of the City Council of the City of Roundup, Montana, held at the City Hall Aug. 10th, 1954, at 8 P.M.

"Meeting was called to order by Mayor Lillian Gildroy with the following Aldermen present: Roberts, Formento, Harper, Schafer, Bianchi, Fanyak and Weir. Absent: Kimbil. (H. H. Chesterfield, Chairman Citizens Committee also present at this meeting.)

"All Council members agreed to waive notice of this special meeting.

"The Mayor announced that the purpose of this meeting was to consider Ex-Mayor Walterm*eir's* offer of settlement in pending suit of the City of Roundup against Waltermire and Liebetrau, made to City Attorney.

"After discussion, it was moved by Schafer, seconded by Harper that the offer of Ex-Mayor Waltermire of $5,000.00 in cash, be accepted in full settlement of the pending suit against the said Waltermire, and others, and that said suit be dismissed only as to the defendant Waltermire upon the express condition that said Waltermire shall release the City of Roundup and any and all persons or individuals in any wise connected with the

said suit and any of the matters and things leading up to the commencement of the said suit, and that the officers of the City be authorized to execute a covenant not to sue upon the payment of the $5,000.00 in cash by the said Waltermire. Motion carried by Poll vote taken, with all members present voting Aye.

"Moved by Harper, seconded by Fanyak, that the City Attorney Mather to be authorized to accept a settlement, identical with the Waltermire settlement, from Frank Liebetrau if such offer of settlement was made by Liebetrau prior to the trial of the pending suit, and further allowing the City Attorney a leeway of $300.00 in such settlement, to be left to the discretion of the Attorney for the City.

"Poll vote taken, all members present voting Aye. Motion carried."

The trial court found that the attorney for the City stated to the court that the City had received satisfaction from Waltermire for its dismissal. An examination of the record reveals that there is no basis for such a finding. The most that can be said is that there was *consideration* for the covenant not to sue pursuant to which the case was dismissed as against Waltermire.

We believe the law in Montana is quite clear on what constitutes a retraxit. Two questions must be answered. Did the plaintiff receive full satisfaction? Did the plaintiff intend to release all of the joint tort-feasors? Unless both of these questions be answered in the affirmative with regard to each case even though words of release be used in the instrument, no release occurs against the joint tort-feasor against whom rights were reserved.

In Black v. Martin, 88 Mont. 256, 270, 292 Pac. 577, 581, it was said:

"Summing up, the true rule appears to be that, if the injured party has accepted satisfaction in full for the injury suffered by him, the law will not permit him to recover again for the same injury; but he is not so affected until he has received full satisfaction, or that which the law considers such. If he

receives part of the damages from one of the wrongdoers, the receipt thereof not being understood to be in full satisfaction of the injury, he does not thereby discharge the others from liability. *Note to Abb. v. Northern Pacific Ry. Co.* [28 Wash. 428, 68 Pac. 954, 58 L.R.A. 293], 92 Am. St. Rep. 874, 875, and cases cited; *Dwy. v. Connecticut Co.*, supra [89 Conn. 74, 92 A. 883, L.R.A. 1915E, 800]; *Gilbert v. Finch*, supra [173 N.Y. 455, 66 N.E. 133, 61 L.R.A. 807]; *Walsh v. New York Central & H. R. Co.*, supra [204 N.Y. 58, 97 N.E. 408, 37 L.R.A., N.S., 1137]; *Adams Express Co. v. Beckwith*, supra [100 Ohio St. 348, 126 N.E. 300]; *Natrona Power Co. v. Clark*, supra [31 Wyo. 284, 225 Pac. 586].''

See also, *Chisholm v. Vocational School*, 103 Mont. 503, 511, 64 Pac. (2d) 838, 843, wherein this court said:

''In a case such as this, if the two parties to whom the injured person looks for compensation are joint tort-feasors, where the injured person accepts full satisfaction or what the law considers such, from one without reservation, as it appears this claimant did from Nagle's, Inc., it is a bar to an action against the other; but if he accepts a payment in consideration of a covenant not to sue, or it is understood that the payment is not in full satisfaction, such payment is not a bar. *Black v. Martin*, 88 Mont. 256, 292 Pac. 577; *Meincke v. Intermountain Transp. Co.*, 101 Mont. 315, 55 Pac. (2d) 680.''

The covenant not to sue in the instant case and the minutes of the city council authorizing it, indicate quite clearly that full satisfaction was not received and that there was an intent not to release anyone except Waltermire.

The respondents, in the instant case, seem to recognize that this is so. They urge that this court should affirm the trial court's judgment under one of four different theories: The first theory is that the dismissal of the suit, with prejudice, was in and of itself sufficient to constitute a retraxit which extinguished the cause of action against all tort-feasors. Second, the extinction of a claim against one primarily liable extinguishes the claim against those secondarily liable. The third

theory is that the motion to dismiss the suit with prejudice coupled with the obvious intent of the city council to discharge not only Waltermire but the others as shown by the minutes constituted a retraxit. The fourth theory is that in any event when one considers the motion to dismiss with prejudice, the resolutions of the city council and the wording of the covenant not to sue, that the covenant in fact was a release and extinguished the claim against all joint tort-feasors.

What has heretofore been quoted from Montana cases adequately disposes of all but the second theory. The second theory is put forth by the respondents in their brief as follows: ''Liebetrau, if he is liable at all, is liable only because of the wrongful acts of Waltermire, hence dismissal of that claim defeats the claim against Liebetrau.''

This theory will be answered in the discussion that follows under the second part of the appellant City's specification of error. It should also be observed that the respondents urge a cross-specification of error to the effect that the demurrer to the complaint should have been granted. We find no merit in this cross-specification of error.

We hold then that the trial court was in error in entering a judgment of dismissal on the basis that the dismissal as to one defendant was a ''retraxit'' that extinguished all claims against joint tort-feasors.

The second part of the appellant City's specifications of error concern the failure of the trial court to adopt the plaintiff's findings of facts and conclusions of law and judgment in favor of the plaintiff City against Liebetrau and the American Surety Company. Since the trial court's judgment must be reversed, and since that judgment was not based upon the merits of the case, we must now consider the evidence to determine whether there is any substantial conflict of the evidence so that as a matter of law this court should direct the entry of judgment. See Alley v. Butte & Western Mining Co., 77 Mont. 477, 487, 251 Pac. 517; Dunn v. Beck, 80 Mont. 414, 425, 260 Pac. 1047.

That the City in operating the housing project was acting in a governmental capacity seems clear. See Rutherford v. City of Great Falls, 107 Mont. 512, 519, 86 Pac. (2d) 656. This being so, the funds of the housing project were public funds.

That Liebetrau was a public officer of the City and under a duty to account for all funds which might come into his hands as such officer also seems clear. See 62 C.J.S. Municipal Corporations, section 546, page. 1016; City of Philipsburg v. Degenhart, 30 Mont. 299, 303, 76 Pac. 694; Adami v. Lewis & Clark County, 114 Mont. 557, 138 Pac. (2d) 969; R.C.M. 1947, section 11-702.

The ordinance creating the office of Commissioner of public works in the City of Roundup provides as follows:

"There is hereby created in the City of Roundup, Montana, the office of commissioner of public works, and it shall be the duty of the mayor, upon the passage and approval of this ordinance, to appoint some competent person to perform the duties of this office as hereinafter prescribed. The person so appointed shall hold such office during the term of the mayor appointing him; and shall receive, in full compensation for his services, a salary which shall be fixed annually by the city council at the same time and in the same manner as the salary of other city officers are fixed; and until the same has been fixed as herein provided the appointee shall receive a salary of two thousand four hundred dollars ($2,400.00) per annum, payable monthly on presentation of claims therefor, the same as other city salaries."

The evidence is clear that the defendant Liebetrau received the money sought to be recovered. He admitted the amounts. He admitted that they were funds of the public housing project, and that he failed to disclose the payment or to make any report to the City as was his duty as a public officer. The payments were never authorized by the City in its official capacity. It is only through the city council that the City could have authorized such action on the part of Walter-

mire and Liebetrau. See Williams v. Board of Commissioners, 28 Mont. 360, 72 Pac. 755; Kirkup v. Anaconda Amusement Co., 59 Mont. 469, 197 Pac. 1005, 17 A.L.R. 441; State ex rel. Urton v. American Bank & Trust Co., 75 Mont. 369, 243 Pac. 1093; State ex rel. School Dist. No. 4, Rosebud County v. McGraw, 74 Mont. 152, 240 Pac. 812.

Liebetrau contends that he was paid a salary by Waltermire —not the City for the operation of the project. Whether or not this is true is immaterial. In 67 C.J.S. Officers, section 118(2), pages 408, 410, it is said:

"Persons not officers, receiving moneys illegally paid by a public officer, may be required to refund them, and the decisions of executive officers as to their legality are not binding on the court." Citing Carbon County v. Draper, 84 Mont. 413, 276 Pac. 667.

Liebetrau was in fact an officer of the City, and the rule ▮ would apply to him irrespective of whether or not Waltermire or the City paid a salary, if it was not authorized. Liebetrau, being a public officer, occupied a fiduciary relationship toward the City and had a duty to account for public funds. The fact that Liebetrau paid money over to Waltermire and that Waltermire paid him back half of it does not change the fact that he was a public officer dealing in public funds and presumed to know the law that he could not receive the money without official action of the city council.

Even so, and the respondents do not challenge seriously most of the foregoing, they assert that there was absolutely no proof of fraud. It should be remembered that this is a civil case. It is not the elements of crime that we are herewith concerned.

In Merchants' Nat. Bank v. Greenhood, 16 Mont. 395, 429, 41 Pac. 250, 259, 851, it was said: "Fraud cannot often be proven by direct evidence. Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loves darkness rather than light, because its deeds are evil.' It is rarely that we can lay our hand upon it in its going. We

are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we so discover it, the search light of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud may become apparent by innumerable circumstances, individually trivial, perhaps, but in their mass 'confirmation strong as proofs of holy writ.' The weight of isolated items tending to show fraud may be 'as light as the shadow of drifting snow,' but the drifting snow in time makes the drift, the avalanche, the glacier.''

See also Hart v. Honrud, Mont., 309 Pac. (2d) 329.

We do not feel it necessary to indulge in a detailed showing of the fraud that permeates the record.

Finally, the respondent urges that the various statutes of limitation apply. It is obvious from the record that the City had no knowledge of the payments taken by Waltermire and Liebetrau.

R.C.M. 1947, section 93-2607, subd. 4, reads as follows:

''Two-year limitation. Within two years: * * *

''4. An action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.''

Respondents urge that the evidence shows that some or many of the council members knew individually of the payments. This might be of importance if criminal intent was required to be proven, but the fact remains that the City did not have knowledge as contemplated by law and as the duty of a public officer dictated must be had. Where a relation of trust such as that of a public officer is had, there is a duty to disclose facts. Kerrigan v. O'Meara, 71 Mont. 1, 227 Pac. 819; 67 C.J.S. Officers, section 116, page 406; State ex rel. Grant v. Eaton, 114 Mont. 199, 133 Pac. (2d) 588; City of Butte v. Goodwin, 47 Mont. 155, 134 Pac. 670; City of Philipsburg v. Degenhart, supra.

Liebetrau admitted receiving the total sum of $8,950 during the period involved. The bonds upon which the American Surety Company is surety are in evidence, and the amount for which the Surety Company is liable is readily ascertainable. Of the $8,950 received by Liebetrau, $1,650 was received during the period covered by the last bond in the sum of $2,000, the remainder was received in amounts ranging from $100 to $200 per month during the period when Liebetrau was covered by successive bonds, each in the amount of $2,000. The total received during this period is in excess of $5,000. The American Surety Company is liable for the sum of $7,650.

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded with direction to enter judgment in favor of the plaintiff City in the sum of $7,650 as against both defendants, and the additional amount of $1,300 against the defendant Liebetrau, together with costs.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ANGSTMAN and ADAIR, concur.