The STATE OF MONTANA, Plaintiff and Respondent, v.
DAN LAVERDURE, Defendant and Appellant.

No. 10358.

Submitted February 15, 1962. Decided April 9, 1962.

370 P.2d 489.

DeKalb, Dockery, Mondale & Johnson, Walter E. Mondale (argued orally), Lewistown, for appellant.

Peter L. Rapkoch, County Atty., and Leonard McKinney, Deputy County Atty. (argued orally), Lewistown, Forrest H.

Anderson, Atty Gen., James Sorte, Deputy Atty. Gen. (argued orally), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

The defendant, Dan Laverdure, was convicted in the District Court for Fergus County, Montana, of the crime of burglary in the first degree and was sentenced therein to serve a term of five years in the state penitentiary. From this judgment he appeals.

The information charged the defendant with the first degree burglary of the B & H Grocery, which is located in Lewistown, Montana. The details of the alleged burglary will be hereinafter set forth by the general testimony of each witness. Generally, the charges herein are supported by accomplice testimony and circumstantial evidence.

The State's first witness, John Leland Blaine, testified that he was the owner of the B & H Grocery; that between closing hours Saturday evening, June 11, 1960, and 11:00 o'clock the following morning, June 12, 1960, the B & H Grocery was burglarized; that entrance was gained by "shattering" the rear door of the store with a pole or post; that he did not know who committed the burglary nor at what time the burglars were there; that sixty to eighty dollars in dollars, half dollars, quarters, dimes, and nickels had been taken from a safe in the rear of the store; that approximately $140 in ten and twenty dollar bills had been taken from the checkstand in front of the store; and that the defendant and his nephew, Vern Swan, were familiar with the store and the general layout thereof inasmuch as they had, on numerous occasions, purchased groceries therein.

The State's second witness was Vern Swan, eighteen-year-old nephew of the defendant, who had just been released from the State Industrial School at Miles City, the day prior to trial in order to testify. Swan was reluctant to testify against his

uncle, the defendant, but did so upon being informed by the district judge that "you are required to testify" and that "you will go to jail until such time as you signify your willingness to testify."

Swan admitted taking part in the burglary and, at the trial, testified that on the night of June 11, 1960, at approximately 9:30, he met the defendant in front of the Montana Tavern in Lewistown, Montana; that both he and the defendant thereupon proceeded to the B & H Grocery, which was several blocks away from the Montana Tavern; that they entered and burglarized the B & H Grocery between the hours of 9:30 and 10:00 P. M.; that the defendant was with him at and during all such times; and that the defendant took part in the burglary in question.

The third and last witness called by the State in its case in chief was Steven Slack. Slack testified that he was a bartender at the Montana Tavern in Lewistown, Montana; that he was tending bar there the night of the burglary; that, on the night of the burglary, the defendant was in the Montana Tavern; that at approximately 9:00 P. M., on the night in question, the defendant left the bar upon his, Slack's, refusal to cash the defendant's "personal" check; that at approximately 11:30 P. M., the defendant returned to the bar buying drinks with ten and twenty dollar bills; and that the defendant, upon his return, had an estimated $100 in ten and twenty dollar bills in his wallet.

These three witnesses concluded the State's case in chief. The defendant thereupon moved to dismiss on the ground that the State had introduced "insufficient corroborating evidence" as required by R.C.M.1947, § 94-7220. The District Court denied the defendant's motion.

The defendant, testifying in his own behalf, denied any connection whatever with the burglary, or that he was present at the B & H Grocery when the money was taken, or had anything to do with the money being taken, or that he had seen Vern Swan on the night in question. He testified that he was in the

Montana Tavern from noon, June 11, 1960, until 1:00 A. M., the following morning, June 12, 1960, except for a brief period from 8:30 until 9:00 P. M., during which time he was outside the bar visiting with his brother, Harvey W. Laverdure.

The defendant further testified that the check the Montana Tavern refused to cash was one belonging to his brother, Harvey; that upon the Tavern's refusal to cash the check, such check was returned to Harvey, who thereupon cashed the check elsewhere and gave the defendant the proceeds therefrom which amounted to $75; that this $75 was the money the defendant used to buy drinks with in the Montana Tavern; and that this $75 was the money the State's witness, Steven Slack, observed in the defendant's wallet.

Harvey W. Laverdure took the stand in his brother's behalf and testified that he went into the Montana Tavern at approximately 9:00 P. M., June 11, 1960, the night of the burglary, to see the defendant; that he gave the defendant a check with which to pay some of his, Harvey's bills and also to pay off a debt he owed the defendant; that such check was made payable to him (Harvey) and represented wages earned by him as a ranch hand; that he asked the defendant to have the bartender at the Montana Tavern cash it for him; that upon the bartender's refusal to cash the check, he, Harvey, took the check, left the Montana Tavern, and cashed it elsewhere; that within "twenty or twenty-five minutes" he returned to the Montana Tavern and gave the defendant the proceeds from the check; and that the proceeds therefrom amounted to $75.

Mrs. Justin Breckenridge was then called by the defendant. Her testimony will be hereinafter discussed.

The last witness called by the defendant was Jack Allen, who testified that he was with the defendant in the Montana Tavern on the night of the burglary; that the defendant was with him from noon, June 11, 1960, until 1:00 A. M., the following morning, June 12, 1960; and that during all such time neither he nor the defendant left the Montana Tavern.

After the defendant introduced his testimony, Joe Hood, deputy sheriff of Fergus County, was called by the State as a rebuttal witness. He testified that during the time of the defendant's incarceration in the Fergus County jail, he overheard a conversation between the defendant and his brother, Harvey, wherein "there was a discussion among the two of them how Harvey would testify he gave [the defendant] the money that night that he was charged with taking [it] from the B & H Grocery." He also testified, over objection, that Harvey Laverdure told him out of the presence of the defendant that he (Harvey) would get Vern Swan for "telling the county attorney" about the defendant.

The defendant has assigned various specifications of error. The first seven challenge the sufficiency of the evidence to corroborate the testimony given by Vern Swan, the alleged accomplice.

In State v. Harmon, 135 Mont. 227, 238, 340 P.2d 128, 133, this court, in quoting from State v. Cobb, 76 Mont. 89, 92, 245 P. 265, stated:

" '(a) The corroborating evidence may be supplied by the defendant or his witnesses.

" '(b) It need not be direct evidence—it may be circumstantial.

" '(c) It need not extend to every fact to which the accomplice testifies.

" '(d) It need not be sufficient to justify a conviction or to establish a *prima facie* case of guilt.

" '(e) It need not be sufficient to connect the defendant with the commission of the crime; it is sufficient if it tends to do so.

" '(f) Whether the corroborating evidence tends to connect the defendant with the commission of the offense is a question of law, but the weight of the evidence—its efficacy to fortify the testimony of the accomplice and render his story trust-

worthy—is a matter for the consideration of the jury.' '' See also State v. Phillips, 127 Mont. 381, 264 P.2d 1009.

■ As above-noted, the corroboration of an accomplice need not connect the defendant with the commission of the crime charged in order to be sufficient to sustain a conviction. It is sufficient if it *tends* to. Independently of the testimony of Vern Swan, the record discloses facts and circumstances which tend to connect the defendant with the commission of the offense. The first seven specifications of error are, therefore, without merit.

■ The defendant next contends that the District Court ''erred in refusing to allow the defendant's offer of evidence of the reputation of the witness, Vern Swan, the accomplice, for truth and veracity.''

At the trial, Mrs. Justin Breckenridge, an aunt of Vern Swan, with whom Swan had lived for three years last past prior to trial, was called by the defendant as an impeaching witness. She was asked by the defendant's counsel what Swan's reputation was for truth, honesty, and veracity. This was objected to by the State and such objection was sustained by the lower court.

The testimony, in the main, presented by the State to sustain the charges against the defendant, emanated from Vern Swan, the alleged accomplice. The jury had the choice of believing Swan or the defendant. It chose to believe Swan.

It is always open to a defendant to challenge the credibility of the witnesses offered by the prosecution who testify against him. R.C.M.1947, § 93-1901-11, provides:

''A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony.''

The right of a party to introduce evidence directly attacking

the credibility of a witness for his adversary is particularly important in a criminal prosecution in attacking the credibility of an alleged accomplice.

The denial of such effort of impeachment of the State's only eye-witness to the burglary necessitates a new trial and we so hold.

The other specifications of error have been examined, but we do not deem it necessary to discuss them as they are either without merit or unlikely to arise in the retrial of the case.

For the foregoing reasons, the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE ADAIR and DOYLE concur.

MR. JUSTICE CASTLES: I dissent.