No. 12766

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

GATE CITY SAVINGS AND LOAN ASSOC., et al.,

Plaintiffs and Respondents,

-vs-

HAROLD PITTS, DIRECTOR, DEPARTMENT OF
BUSINESS REGULATION OF THE STATE OF MONTANA, et al.,

Defendants,

MONTANA SAVINGS & LOAN LEAGUE, GREAT FALLS
FEDERAL SAVINGS & LOAN ASSOC. et al.,

Defendant in Intervention and Appellants.

---

Appeal from:   District Court of the First Judicial District,
               Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellants:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        Lon J. Maxwell, Assistant Attorney General, argued,
        Helena, Montana
        Church, Harris, Johnson & Williams, Great Falls,
        Montana
        Charles C. Lovell argued, Great Falls, Montana

    For Respondents:

        Loble, Picotte, Loble, Helena, Montana
        Peter C. Pauly argued, and Henry Loble argued,
        Helena, Montana

---

Submitted:  March 3, 1975

Decided:  APR - 8 1975

Filed:  APR - 8 1975

Thomas J. Kearney
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by defendant Harold Pitts, Director of the Department of Business Regulation of the state of Montana (hereinafter referred to as Director), and intervening defendants, Montana Savings & Loan League, Great Falls Federal Savings & Loan Association and First Federal Savings and Loan Association, from a judgment and decree of the district court, Lewis and Clark County, in favor of plaintiffs Gate City Savings and Loan Association (hereinafter referred to as Gate City), Fidelity Savings and Loan Association (hereinafter referred to as Fidelity) and Glendive Building and Loan Association (hereinafter referred to as Glendive).

Gate City commenced this action against John A. Dowdall, then Director of the State Department of Business Regulation, under the provisions of the Uniform Declaratory Judgments Act, sections 93-8901-93-8916, R.C.M. 1947, seeking to have the district court construe the provisions of Title 7, R.C.M. 1947, governing the operations and activities of building and loan associations in the state of Montana and to overrule two official opinions of the Montana attorney general.

On motion, Montana Savings and Loan League, Great Falls Federal Savings & Loan Association, and First Federal Savings and Loan Association were granted leave to intervene. The district court ordered Harold Pitts, successor in office to John A. Dowdall, substituted as defendant. Fidelity and Glendive were ordered joined as indispensable parties plaintiff, pursuant to Rule 19, M.R.Civ.P. The cause was submitted to the district court on an agreed statement of facts.

The district court ruled, in substance, that the Director was authorized to consider Gate City's application to do business in Montana and to merge with Fidelity and Glendive; and, the laws

of Montana permit the establishment, maintenance and operation of branch offices in Montana by foreign or domestic building and loan associations. The Director and intervenors appeal.

Gate City is a savings and loan association incorporated under the laws of the state of North Dakota. Its principal place of business is Fargo, North Dakota, with eight branch offices in North Dakota. Fidelity and Glendive are savings and loan associations incorporated under the laws of the state of Montana. Their offices are located respectively at Great Falls and Glendive, Montana.

On May 10, 1972, Gate City entered into two separate agreements of merger with Fidelity and Glendive with the intent to continue to operate the existing offices at Great Falls and Glendive, if and when the mergers became effective. On June 8, 1972, Gate City filed an application, with supporting documents, with the Director seeking permission to conduct savings and loan activities in the state of Montana and permission to merge with Fidelity and Glendive. The application to merge was conditioned upon the consent of the members and shareholders of the institutions involved; the consent of the Director; the approval of the Federal Home Loan Bank Board (hereinafter referred to as FHLBB); and issuance of insurance of accounts by the Federal Savings and Loan Insurance Corporation.

On July 10, 1972, Director Dowdall requested an attorney general's opinion concerning Gate City's application. Attorney General Woodahl ruled that Gate City's proposed merger was contrary to Montana law, 34 Opinions of the Attorney General, No. 53. The opinion ruled the application was deficient in that the proposed merger had not been ratified by two-thirds of the members of each of the three associations involved prior to the submission of the application to the Director for his approval. It relied upon a formal opinion issued by Attorney General Anderson

which held that branch savings and loan associations are prohibited by Montana law, 29 Opinions of the Attorney General, No. 2.

On October 12, 1972, on the basis of Attorney General Woodahl's opinion, Director Dowdall denied Gate City's application. This action followed.

The issues involved on appeal are:

(1) Whether the district court had jurisdiction of the subject matter of the case?

(2) Whether Gate City's application was deficient in that the proposed merger had not been ratified by the members of each of the associations involved, prior to its submission to the Director?

(3) Whether a North Dakota chartered savings and loan association may merge with two Montana chartered savings and loan associations and maintain their separate existing facilities?

Issue 1, whether the district court had jurisdiction; we hold it did. The Director's contention is that Gate City sought merely an advisory opinion from the district court and the only way Gate City could present a justiciable controversy to that court would be if it had first secured the approval of the merger by FHLBB. Relying upon 12 U.S.C. §1730a and 12 C.F.R. §§ 556.5(b)(2) and 563.22, the Director then argues there is absolutely no possibility the FHLBB would approve this merger across state boundaries.

The short answer to the Director's contention is that we are living in a federal system. Gate City's proposed merger is governed by federal and state law. Pursuant to section 7-113(22), R.C.M. 1947, the proposed merger must be approved by the Director. It also must be approved by the FHLBB, at least insofar as it involved an increase in insurance of accounts. (Fidelity is an uninsured association).

Gate City had to start somewhere in seeking approval of

its proposed merger, whether it be the Director or the FHLBB. That Gate City started with the Director, rather than the FHLBB, does not render this an advisory, nonjusticiable controversy. In 12 C.F.R. § 571.5(b)(1), the FHLBB states its general policy concerning merger proposals:

> "The legality of a proposed merger is a precondition to further consideration by the Board."

In making that decision, the Board looks to "applicable law". In light of 12 C.F.R. § 571.5 and the two attorney general opinions heretofore mentioned, Gate City's decision to first pursue its state remedies appears to be reasonable.

It is not necessary to inquire into, nor decide, whether Gate City will succeed in obtaining FHLBB approval of the proposed merger. That decision will be made in any event by the FHLBB, with possible appeal to the federal courts. We shall not prematurely foreclose Gate City's federal remedies.

Issue 2, is the Director's contention that section 7-113(22), R.C.M. 1947, mandates that the merger agreements be ratified by two-thirds of the members of each of the three associations involved _before_ the application of merger may be filed and acted upon by the Director. That section reads:

> "Any two (2) or more building and loan associations, by and with the consent and approval of the superintendent of banks, [now the Director], may consolidate and unite and become incorporated in one (1) body, with or without any dissolution or division of the funds or property of any such association, or any such association may transfer its engagements, funds and property to any like association upon such terms as may be agreed upon by a majority vote of the respective board of directors, and ratified by a two-thirds (2/3) vote of the shares present and voting in person or by proxy at a special meeting or meetings of the stockholders of the respective associations convened for that purpose, upon notice given as provided by law, said notice to state the object of the meeting. No such transfer shall prejudice any right of any creditor of such association."

There is nothing in section 7-113(22), R.C.M. 1947, to indicate that the two-thirds vote of the shareholders must precede the

consent of the Director, nor alternatively, that the Director's consent must precede the shareholders' vote. Either may precede the other. In a sense appellant's issue 2 is moot, since the merger agreements have since been ratified by two-thirds of the members of each of the three associations.

Gate City has complied with the requirements of sections 7-131 and 7-137, R.C.M. 1947. Gate City's application shows that it was applying for a certificate of authority to conduct savings and loan activities in the state of Montana, a precondition to both doing business in Montana and any action by the Director on the merger.

Intervenors raise the issue that Fidelity and Glendive should have joined in the application for merger. We agree. Gate City's application asked for two things, permission to do business in the state of Montana and permission to merge with Fidelity and Glendive. In further proceedings, this joinder should be made.

The heart of the controversy is appellant's issue 3: Whether a North Dakota chartered savings and loan association may merge with two Montana chartered savings and loan associations and maintain their separate existing facilities? We hold that a North Dakota chartered savings and loan association may merge with two Montana chartered savings and loan associations and maintain their separate existing facilities. Section 7-130, R.C.M. 1947, reads in pertinent part:

> "The provisions of this act shall apply to and be enforceable against all corporations, persons, firms, partnerships, associations, trustees or combinations of persons whatsoever, whether foreign or domestic * * *". (Emphasis supplied.)

Although section 7-113(22), R.C.M. 1947, was not a part of "this act" referred to in section 7-130, the great bulk of Title 7, R.C.M. 1947, was. The obvious legislative intent was that foreign

and domestic savings and loan associations be treated alike. Thus, the fact Gate City is organized under the laws of North Dakota, rather than the laws of Montana, is immaterial.

Section 7-113(22), R.C.M. 1947, reads in pertinent part:

"Any two (2) or more building and loan associations * * * may consolidate and unite and become incorporated in one (1) body * * * without any dissolution or division of the funds or property of any such association * * *."

This is exactly what Gate City, Fidelity, and Glendive seek to do. The statute permits them to do it.

The appellant Director's reliance on section 7-102, R.C.M. 1947, for the proposition that Gate City's principal place of business must be in Montana is misplaced. That section relates to what must be included in articles of incorporation of prospective corporations seeking to be incorporated under the laws of Montana. Gate City is already incorporated under the laws of North Dakota. Section 7-131, R.C.M. 1947, clearly provides that a foreign association may have a principal place of business both within and without Montana.

This opinion shall constitute a declaratory judgment. Each party shall bear its own costs.

```
                         ------------------------------------
                                    Justice
We concur:

_____
     Chief Justice

_____

_____

_____
     Justices
```

- 7 -