No. 12760

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

PETER L. JOHNSON, et al.,

Plaintiffs and Respondent,

-vs-

LEONARD F. DORAN, et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Seventh Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Smith, Emmons and Baillie, Great Falls, Montana
Robert J. Emmons argued, Great Falls, Montana
Dola N. Wilson, Great Falls, Montana
Paul Cresap, Sidney, Montana
Leonard H. Langen, Glasgow, Montana
Habedank, Cumming and Best, Sidney, Montana
Anseth and Rustad, Williston, North Dakota

For Respondent:

Hoyt and Bottomly, Great Falls, Montana
Richard V. Bottomly argued, Great Falls, Montana
Victor G. Koch appeared, Sidney, Montana

---

Submitted: January 14, 1975

Decided: AUG 2 9 1975

Filed: AUG 2 1975

_Thomas J. Kearney_
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by defendant Leonard Doran from a judgment entered in the district court, Richland County, following a jury verdict for plaintiffs.

Plaintiffs, three brothers and two sisters, brought this action to quiet title to real property and asserted additional counts for rescission of contracts relating to the real property, slander of title, declaratory relief, and damages. The jury returned a verdict for plaintiffs awarding $16,772 general damages, and $43,500 exemplary damages solely against defendant Leonard Doran. The district court's judgment awarded $12,500 attorney fees to plaintiffs from defendant Leonard Doran. The judgment quieted title to the real property in plaintiffs against defendants Leonard Doran and Elmer Foss. The judgment rescinded the contract between Louis Vournas and Leonard Doran and Audrey A. Doran, his wife. From this judgment defendant Leonard Doran appeals.

Plaintiff brothers and sisters were the owners in varying proportions of a ranch of approximately 3,335 acres. Harlan and Peter Johnson jointly owned approximately 2,080 acres; Harlan, Peter and Wesley Johnson owned 360 acres, title to Wesley's share being in the name of his sister, Marie Johnson. Peter, Harlan and Marie Johnson, and the other sister, Karine Lanning, jointly owned approximately 895 acres.

Peter and Harlan operated the ranch; Wesley lived in Great Falls, and the two sisters lived in Camas, Washington. From the record it appears that both Peter and Harlan have an 8th grade education and have been addicted to drink for many years. This has resulted in their being easily influenced and are often under the influence. Wesley, also with an 8th grade education, is likewise a drinker and perhaps somewhat slower in his mental faculties

- 2 -

than his brothers.

The fact situation, as disclosed by the record, is extremely voluminous and we will not attempt to do other than give a brief resume.

Robert Torgerson, a real estate agent, on November 16, 1971, obtained an exclusive listing from Peter and Harlan for all the ranch property, subject to the approval and signatures of the two sisters. This approval was obtained on January 4, 1972. This listing called for a purchase price of $285,000, $29,000 down, a 20 year contract, 6% interest, reservation of one-half of the minerals, and a real estate commission of 5%.

On November 5, 1971, Andrew Thompson, a licensed real estate salesman, secured an exclusive listing from Harlan and Peter. Thompson was working for R. H. Nutt, who held the brokerage license. These two had a falling out and Thompson was discharged by Nutt, who sent Thompson's license in to the Real Estate Board on November 17, 1971.

Thompson then, on either November 18 or 19, 1971, called Leonard Doran, a Great Falls real estate broker for whom Thompson had previously worked. Doran flew to Sidney on November 20 and Thompson introduced Doran to Harlan and Peter stating that he, Doran, could get them the most for the place. Harlan and Peter said they would like to have Doran work for them, because they thought he could get them more money than they had signed for in the Torgerson listing, about which they were concerned and so informed Doran. Doran told them not to worry, he would get rid of it and would take the listing. Doran signed the Thompson listing, the date was changed by Thompson from November 5 to November 20. It contained a description of all the property and was subject to the sisters' approval. Doran, around December 13, called the sisters in an attempt to get their signatures but they refused

to sign.  The listing had the same provisions as the Torgerson listing except it called for a 10% commission and did not contain a mineral reservation.

There were two interested buyers known by the various real estate agents; Foss and one Vournas who had made a deposit on November 7 or 8, 1971, with Nutt with an offer to buy, which offer when presented to the Johnsons by Nutt was rejected.

Around the middle of December, Torgerson had Vournas sign an offer to purchase and took it to Camas but the sisters refused the offer.  They told Torgerson to return at a later date. He did return on January 4, 1972, at which time the sisters signed the listing agreement previously signed by the brothers.  On December 12 Doran claims to have first learned that Torgerson also had an exclusive listing from the Johnson brothers.  An attorney for Doran, Dola Wilson, came from Great Falls; Torgerson advised Doran he had the place sold to Vournas.  The attorney and Doran then went to the Johnsons and advised them they had a right to cancel the Torgerson listing because it was incomplete, it did not have the sisters' signatures.  Doran personally wrote a letter to Torgerson, signed by the Johnsons, which read:

"Culbertson, Montana
December 12, 1971

"Torgerson and Torgerson
Sidney, Montana

"Gentlemen:

"Our land has been exclusively listed with
Intermountain Land Company of Great Falls,
Montana, and this letter is to notify you
that you are not authorized to sell or
accept deposits for the sale of our ranch
unless you wish to work through the Inter-
mountain Land Company listing.  This is
notice to you to terminate all prior agree-
ments we may have had either written or
oral on our land in T. 27 N. R55E; Richland
County, Montana.

"Peter L. Johnson, Jr.
Harlan Johnson"

- 4 -

The Intermountain Land Company is the name of Doran's business.

On December 18, 1971, Doran sent Thompson to the ranch to bring Harlan and Peter to Lewistown, Montana, and he did so, and they met Doran and his attorney there. This meeting resulted in the execution by the Johnsons of an option to purchase their interests to Doran for $225,000, 6% interest, 20 year contract, $55,000 down; an election thereunder would constitute a sale within the terms of the Thompson-Nutt-Doran listing and would be subject to the real estate commission. This option was recorded on December 21, 1971.

Then Doran contacted Wesley Johnson in Great Falls, and on February 10, 1972, a listing agreement and option for Wesley's interest was executed by Wesley Johnson and his wife. On February 22, 1972, the first complaint was filed, service on Doran made on March 1, 1972. Counsel for plaintiffs in that action was Victor G. Koch of Sidney.

On February 22, 1972, a contract for deed was executed by Wesley, his wife and Doran and a notice of sale based on such contract was placed of record on February 24, 1972.

On June 18, 1972, Doran requested Thompson to bring Peter and Harlan to Glasgow and he then flew them to Great Falls. There they executed contracts for deed with Doran and then they went to Wilson's office where the contracts were notarized. Wilson prepared a praecipe and stipulation to dismiss the lawsuit and Peter, Harlan, Doran, and Wilson signed it. Doran then took Peter and Harlan to Sidney to attorney Koch's office. Koch during the conversation there, told Doran that he thought his practice was unethical and wholly improper by negotiating with his clients behind his back. Koch was shown the praecipe for dismissal but he refused to sign it and prepared a withdrawal of counsel. Koch then called Marie and told her what was happening. Doran, after leaving Koch's

office, later took Harlan and Peter to Camas, Washington.

At Camas, after considerable discussion between members of the family and with Doran the following instrument was prepared and signed:

"June 28, 1972
Camas, Washington

"We, the undersigned, have agreed to settle the lawsuit Peter and Harlan et al vs. Doran amongst ourselves and wish to have it dismissed.

Marie L. Johnson
Karine Lanning
Leonard F. Doran"

A letter was also sent to Koch explaining that they had settled the matter.

There is testimony that when Doran took Peter and Harlan to Camas he, Doran, represented he had fired Koch and as far as Torgerson was concerned, he was out; that Doran would take care of him and that Torgerson had been dismissed or his listing had been cancelled. By reason of these representations the contracts for deed were signed by the sisters. Marie L. Johnson testified:

"Q. Did you give some thought to Mr. Torgerson having sold the property to Mr. Vournas? A. Well, we mentioned the fact, and Mr. Doran said that he would take care of that or it had been taken care of and that Torgerson was out.

"Q. Did you give some thought to the fact the brothers were without cows and without the crop? A. I knew that. I knew it had to be."

Thereafter present counsel were retained and the complaint in the instant action was filed August 30, 1972.

There were many conversations, phone calls, preparation of contracts, listings, letters between the various persons, requests to have this lawsuit dismissed, practically all of which were initiated by Doran in his effort to influence the Johnsons and their sisters to avoid the Torgerson listing and permit Doran to profit from the Thompson listing.

We further comment that the record indicates Doran knew at the moment he entered into the option with Peter and Harlan that plaintiffs were able to sell the property through the Torgerson listing for $285,000, with only a 5% commission or $14,250. But Doran incorporated into an option a 10% commission, or $28,500. Plaintiffs could have obtained a net amount under the Torgerson listing of $270,750 but under Doran's proposals they would have received $246,500, a difference of $24,250, and in addition they would lose one-half the minerals.

Doran contends that: (1) the evidence was insufficient to justify the verdict and the court erred in denying the motion for new trial on that ground; (2) section 66-1940(c), R.C.M. 1947, is unconstitutional and denies Doran his right to a trial by jury on the issue of attorney fees, and the fee of $12,500 awarded by the court was excessive; (3) the verdicts of $16,722 and $43,500 and award of attorney fees are excessive as to show the verdicts and award of attorney fees were given under the influence of passion or prejudice; (4) the court erred in dismissing the third counterclaim of Doran and refusing to allow him to file an amended third counterclaim; and, (5) the memorandum of costs and disbursements by plaintiffs for deposition costs cannot be allowed as a matter of law.

This is a case involving fraud in that it was alleged that Doran exercised undue influence and took unlawful advantage of the Johnsons and his conduct was deceitful and fraudulent.

Before we discuss the claimed errors alleged here by defendant Doran, we quote from Merchant's National Bank v. Greenhood, 16 Mont. 395, 429, 430, 41 P. 250:

> " * * * Fraud cannot often be proven by direct
> evidence. Fraud conceals itself. It does not
> move upon the surface in straight lines. It
> goes in devious ways. We may with difficulty

- 7 -

know 'whence it cometh and wither it goeth.'
It 'loves darkness rather than light, be-
cause its deeds are evil.' It is rarely that
we can lay our hand upon it in its going. We
are more likely to discover it at its desti-
nation, before we know that it has started upon
its sinuous course. When we so discover it, the
search light of a judicial investigation goes back
over its trail and lightens it from beginning to
end. As the woodsman follows his game by slight
indications, as a broken twig or a displaced
pebble, so fraud may become apparent by innumerable
circumstances, individually trivial, perhaps, but
in their mass 'confirmation strong as proofs of
holy writ.' The weight of isolated items tending
to show fraud may be 'as light as the shadow of
drifting snow,' but the drifting snow in time makes
the drift, the avalanche, the glacier. Fraud may
hang over the history of the acts of a man like the
leaden-hued atmosphere upon the house of Usher,
'faintly discernible but pestilent, an atmosphere
which has no affinity with the air of Heaven.'

" * * *

" * * * 'In questions of fraud a wide range of
evidence is allowed. Fraud assumes many shapes,
disguises, and subterfuges, and is generally so
secretly hatched that it can only be detected by
a consideration of facts and circumstances which
are not unfrequently trivial, remote and dis-
connected. To interpret their meaning, or the
full meaning of any one of them, it may be neces-
sary to bring them together and contemplate them
all in one view. In order to do this, it is nec-
essary to pick up one here and another there until
the collection is complete. A wide latitude of
evidence is therefore allowed, in order that fraud
may be detected and exposed.'"

This Court has approved these statements consistently. See:

Roman v. Albert, 81 Mont. 393, 264 P. 115; Hart v. Honrud, 131

Mont. 284, 309 P.2d 329; City of Roundup v. Liebetrau, 134 Mont.

114, 327 P.2d 810.

Here, the jury, based upon instructions defining mistake,

fraud, and undue influence, answered specific interrogatories

promulgated by the court at the request of counsel for plaintiffs

and defendants. These interrogatories and the jury answers were:

"INTERROGATORY NO. 1: Do you find that the
contract for deed executed by plaintiffs, Peter
Johnson, and Harlan Johnson with the defendant,
Leonard F. Doran, was executed under mistake of

fact or law or undue influence or fraud express or implied?

"ANSWER: Yes.

"INTERROGATORY NO. 2: Do you find that the contract for deed executed by plaintiff, Wesley Johnson, with the defendant, Leonard F. Doran, was executed under the mistake of fact or law or undue influence or fraud express or implied?

"ANSWER: Yes.

"INTERROGATORY NO. 3: Do you find that the contract for deed executed by plaintiff, Marie Johnson, with the defendant, Leonard F. Doran, was executed under the mistake of fact or law or undue influence or fraud, express or implied?

"ANSWER: Yes.

"INTERROGATORY NO. 4: Do you find that the contract for deed executed by the plaintiff, Karine Lanning, with the defendant, Leonard F. Doran, was executed under the mistake of fact or law or undue influence or fraud, express or implied?

"ANSWER: Yes."

The court further instructed the jury to answer certain interrogatories in reference to statutory violations of the Real Estate License Act which we set out with the jury answers:

"INTERROGATORY NO. 1: Do you find that the defendant, Leonard F. Doran, violated any of the provisions of Section 66-1935, 66-1936 and 66-1937, as defined to you in Court's Instruction No. 21 and 23?

"ANSWER: Yes.

" * * *

"INTERROGATORY NO. 1: Do you find that the defendant, Andrew Thompson, violated any of the provisions of Section 66-1935, 66-1936 and 66-1937, as defined for you in Court's Instruction No. 21 and 23?

"ANSWER: Yes."

One other matter should be mentioned, Vournas has been in possession of the ranch since signing the purchase and sale agreement with the plaintiffs which had been prepared by Torgerson. He filed a notice of interest in real property pursuant to the Torgerson agreement. It was filed on the 30th of June, 1972,

- 9 -

with the Clerk and Recorder of Richland County. Vournas has at all times held the property pursuant to the purchase and sale agreement and his notice of interest through the contract with Peter, Harlan, Marie and Karine. On June 20, 1972, the date that Doran entered into the contract for deed with Peter and Harlan, Doran had his attorney prepare a notice to quit directed to Vournas to remove himself from the premises. The notice was based upon the option and contract entered into by and between Doran, Peter and Harlan. Vournas refused to remove himself on the basis that he was in possession pursuant to the purchase and sale agreement. After Doran returned from Camas, and after he had secured contracts from Karine and Marie, Doran then went to see Foss on July 5, 1972. Foss signed a contract for deed, and armed with this contract he then went to see the attorney for Vournas. This resulted in Vournas entering into a contract for deed with Doran which was on the same terms and conditions as that prepared by Torgerson and entered into between Vournas and plaintiffs. The contract was dated July 12, 1972. Vournas said the reason that he entered into the contract with Doran was on advice of his counsel, and to play it safe more or less. Thereafter on April 5, 1973, Doran gave Vournas a notice to either pay up under the contract and accept the premises by virtue of the contract with whatever defects there might be to the title or return the premises and the contract would be rescinded. He tendered $10,000 with the notice. His tender was refused.

Since February 11, 1972, plaintiffs have been out of possession of the property. They have had no income nor profits from the property. The taxes have not been paid nor has any of the balance of the principal or interest been paid on the note at the Culbertson Bank; nor have plaintiffs received any interest or income on their equity in the property. Vournas has not agreed to

- 10 -

pay any interest during this period.

As to Doran's contention the evidence was insufficient to justify the verdict, from our review of the testimony and examination of the documentary evidence the evidence was sufficient and the court was correct in denying the motion for new trial on that ground.

As to Doran's contention that section 66-1940(c), R.C.M. 1947, is unconstitutional, this issue was raised for the first time on appeal. This Court has consistently ruled that a constitutional issue is waived if not presented at the earliest opportunity. State v. Laverdure, 140 Mont. 236, 370 P.2d 489. While Doran argues the issue was raised on the motion for new trial, we have examined the language of the motion and find it does not raise the question of the constitutionality of this statute, and therefore decline to rule upon such contention.

Turning now to the contention that the verdicts and award of attorney fees are excessive and show that they were given under the influence of passion and prejudice. While Doran asserts the jury "heaped" the punitive damages upon him and this evidences its passion and prejudice, we do not concur. Rather it would appear the jury, after listening to this sordid tale of the efforts of a real estate broker to "move in" on another broker's clients and his perfidy in doing so, and its examination of the documentary evidence which so clearly discloses such perfidy, came to the conclusion that such actions were reprehensible and the person responsible should be punished by an award of exemplary damages.

We fail to see in what particular the verdict of $16,722 is excessive. There was an abundance of proof in the record to justify the jury in returning such a verdict. For one thing, the loss of interest for a period of three years and the necessity of paying interest on a loan against the property which, if the

- 11 -

property had been sold in due course and under good business management, and without interference, the loan could have been paid off without further interest charges.

As to the dismissal of the third counterclaim and refusal to permit the filing of an amended third counterclaim, it appears that a few days before the trial of this action this third counterclaim was filed alleging tortious conduct on the part of plaintiffs against Doran. The depositions of all parties had been taken and plaintiffs contended the pleading was without substance in any particular. It would appear the answer and the affirmative defenses and first and second counterclaims alleged basically all that was said in the third counterclaim. We observe no abuse of discretion in the ruling of the court.

As to the memorandum of costs and disbursements, again, we have a situation where no objection was made by defendant Doran to the cost bill as required by section 93-8619, R.C.M. 1947. In the absence of a proper motion to retax costs in the district court, we will not rule when it is raised for the first time on appeal.

The judgment of the district court is affirmed.

                                        _____
                                                Chief Justice

We concur:

_Wesley Castles_

_John Conway Harrison_

_Frank I. Haswell_

_____
  Justices

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 12760

PETER L. JOHNSON et al.,

Plaintiffs and Respondent,

vs.

LEONARD F. DORAN et al.,

Defendants and Appellants.



ORDER

IT IS ORDERED that the following line be amended in the above-captioned opinion.

Line 11 from the top of page 11 reads:

"portunity. State v. Laverdure, 140 Mont. 236, 370 P.2d 498."

Please amend it to read:

"portunity. Union Interchange, Inc. v. Allen, 140 Mont. 227, 370 P.2d 492."

DATED this 26th day of September, 1975.

_____
Chief Justice