No. 14277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

IN THE MATTER OF THE APPLICATION FOR
AUTHORITY TO CONDUCT SAVINGS AND LOAN
ACTIVITIES IN THE STATE OF MONTANA BY
GATE CITY SAVINGS AND LOAN ASSOCIATION
OF FARGO, NORTH DAKOTA.

Appeal from:  District Court of the First Judicial District,
              Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

    For Appellants:

        Hooks and Budewitz, Townsend, Montana
        Patrick F. Hooks argued, Townsend, Montana
        Scott, Linnell, Neill and Newhall, Great Falls, Montana
        Kenneth Neill argued, Great Falls, Montana
        Loble and Pauly, Helena, Montana
        Peter Pauly argued, Helena, Montana
        ~~Alexander, Kuenning, Miller and Ugrin, Great Falls, Montana~~
        ~~Edward Alexander argued, Great Falls, Montana~~

    For Respondents:

        Church, Harris, Johnson and Williams, Great Falls, Montana
        Charles Lovell argued, Great Falls, Montana
        Cannon and Gillespie, Helena, Montana
        Ross W. Cannon argued, Helena, Montana
        Alexander, Kuenning, Miller and Ugrin, Great Falls, Montana
        Edward Alexander argued, Great Falls, Montana

                        Submitted:  February 14, 1979
                        Decided:  JUL 3  1979

        JUL 3  1979

Filed:

*Thomas J. Kearney*
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Gate City Savings and Loan Association of Fargo, North Dakota ("Gate City") and Fidelity Savings and Loan Association of Great Falls, Montana ("Fidelity") appeal from judgment of the Lewis and Clark County District Court in a proceeding for judicial review of an administrative hearing before the Department of Business Regulation ("Department"). The District Court reversed the Department's approval of a proposed merger between Gate City and Fidelity because the statute governing merger of building and loan associations, section 7-113.2, R.C.M. 1947, now section 32-2-231 MCA, (formerly section 7-113(22), R.C.M. 1947) contained an unconstitutional delegation of legislative power. For the reasons set forth below, we affirm.

The facts leading to this appeal are as follows: In 1972 Gate City applied to the Director of the Department of Business Regulation ("Director") for approval to merge with Fidelity and with Glendive Building and Loan Association of Glendive, Montana ("Glendive"). The application for merger was made pursuant to section 7-113(22), R.C.M. 1947, which provided:

> ". . . Any two (2) or more building and loan associations, by and with the consent and approval of the superintendent of banks, [now known as the Director of the Department of Business Regulation] may consolidate and unite and become incorporated in one (1) body, with or without any dissolution or division of the funds or property of any such association, or any such association may transfer its engagements, funds and property to any like association upon such terms as may be agreed upon by a majority vote of the respective board of directors, and ratified by a two-thirds (2/3) vote of the shares present and voting in person or by proxy at a special meeting or meetings of the stockholders of the respective associations convened for that purpose, upon notice given as provided by law, said notice to state the object of the meeting. No such transfer shall prejudice any right of any creditor of such association." (Emphasis and bracketed material added.)

(This statute in its current, amended form is found at section 7-113.2, R.C.M. 1947, now section 32-2-231 MCA. For purposes

-2-

of the issues considered herein, the amended version is identical to section 7-113(22).)

Being uncertain on how to treat the proposed merger application, the Director requested an opinion from the State Attorney General. On October 3, 1972, the Attorney General issued a formal opinion that Montana law prohibits the proposed merger because operation of branch offices in this State by foreign savings and loan associations is forbidden. 34 Op. Att'y. Gen. No. 53 (1972). The Department therefore denied Gate City's application for merger.

Shortly thereafter, Gate City commenced a declaratory judgment action in Lewis and Clark County District Court seeking statutory construction of section 7-113(22) in light of the proposed merger and the Attorney General's opinion. Glendive and Fidelity were joined as plaintiffs and the Director was named as the defendant. The Montana Savings and Loan League, First Federal Savings and Loan Association of Great Falls, Montana, and Great Falls Federal Savings and Loan Association of Great Falls, Montana (hereinafter "opponents") intervened in opposition to the proposed mergers. On January 23, 1974, the District Court overturned denial of Gate City's application. The Director and opponents appealed and the judgment was affirmed by this Court in Gate City v. Pitts (1975), 166 Mont. 411, 533 P.2d 1083.

Gate City reapplied to the Department, and the Director held a prehearing conference for the purpose of "defining issues, determining witnesses and agreeing upon stipulations." The report of this prehearing conference shows that "counsel for the various parties and the department were unable to reach any significant agreement as to what constitutes the exact issues." The Department nonetheless stated its position that "since there

-3-

are no specific statutory guidelines the issues involved are necessarily broad." The Department refused to adopt the various specific criteria proposed by the opponents. The only substantive criteria stated was whether it would be in the public interest to grant or deny the proposed mergers.

Hearings began on September 23, 1975 and lasted a total of seven days. The Director finally issued his lengthy findings, conclusions and order on July 19, 1976 wherein he concluded that the proposed merger of Gate City and Fidelity was in the public interest but the proposed merger of Gate City and Glendive was not. The Department therefore approved the Gate City/Fidelity merger and disapproved the Gate City/Glendive merger.

Inquiries were made on if and when petitioners for rehearing would be entertained. The Department responded on August 11, 1976 with a detailed time schedule for petitions, briefing and argument. All specified deadlines were followed by both opponents and applicants, Gate City and Fidelity. The Department denied the petitions for rehearing on November 1, 1976.

On November 30, 1976, opponents brought the present suit for judicial review of the Department's findings and conclusions in Lewis and Clark County District Court. Gate City, the Director and Fidelity all filed responses to the petitions for judicial review that did not question the timeliness of the petitions, but rather contended that the opponents' petitions failed to state any of the grounds prescribed in section 82-4216(7), R.C.M. 1947, now section 2-4-704(2) MCA, for reversal or modification of the Department's rulings. After extensive briefing and oral argument, the court issued an order reversing the Department's ruling insofar as it purported to approve the proposed merger of Gate City and Fidelity. The Department's ruling was reversed on the ground that the statute permitting such mergers, section 7-113.2,

-4-

contained an unconstitutional delegation of legislative power to the Department by reason of a lack of statutory standards to guide its discretion. The court also stated "even if it be assumed that the legislative oversight might have been cured by the administrative agency, it is plain that such was not accomplished here."

Gate City and Fidelity appeal from this order and present the following issues for our consideration:

(1) Whether the District Court erred in ruling that opponents' petitions for judicial review were timely filed under section 82-4216(2)(a), R.C.M. 1947, now section 2-4-702(2)(a) MCA.

(2) Whether opponents were estopped from challenging the constitutionality of section 7-113.2, R.C.M. 1947, now section 32-2-231 MCA.

(3) Whether the District Court erred in holding section 7-113.2 constitutes an unconstitutional delegation of legislative power due to the absence of standards.

(4) If an agency may supply appropriate standards in the absence of statutory standards, were adequate standards provided here?

Gate City, alone, insists this case can be decided on a nonconstitutional ground; that the District Court was without jurisdiction because the opponents' petitions for judicial review were not timely filed in accordance with section 82-4216(2)(a), R.C.M. 1947, now section 2-4-702(2)(a) MCA.

In pertinent part, this statute provides:

"Proceedings for review shall be instituted by
filing a petition in district court within 30 days
after service of the final decision of the agency
or, if a rehearing is requested, within 30 days after
the decision thereon."

Gate City argues that this provision does not create a right to petition for rehearing; it merely accomodates such right where

-5-

adopted pursuant to administrative rulemaking procedure. Gate

City relies on Koehn v. State Bd. of Equalization (Cal.App.

1958), 333 P.2d 125, 128 for the "general rule" that an

administrative agency has no inherent power to rehear its

decision. While this may be the general rule in California, it

is not nationally. See, 73 C.J.S. Public Administrative Bodies

and Procedure §156, n. 82; Annot., 73 A.L.R.2d 939. The

annotation summarizes:

> "Some authorities have expressed the view that,
> like a court of general jurisdiction, an
> administrative agency exercising functions of a
> judicial nature has the inherent power to grant
> a rehearing or otherwise to reconsider a previous
> decision. Other authorities deny the existence of
> such power and proceed on the theory that the
> power does not exist, in the absence of specific
> statutory authority. An intermediate position
> is taken by those authorities which consider the
> controlling statute as a whole with a view to
> determining whether it was the intention of the
> legislature to confer the power of reconsideration
> upon the agency." (Footnotes omitted.) 73 A.L.R.2d
> at 942-43.

Notably, even the California court more recently stated that all

administrative bodies have inherent power to reconsider their

decisions unless it is such that it may not be set aside or

unless reconsideration is precluded by statute. In Re Fain

(Cal.App. 1976), 135 Cal.Rptr. 543, 550.

Thus far, this Court has not ruled on whether an admin-

istrative agency has inherent power to reconsider its decision.

The facts of the instant case do not require that we do so.

The Department's final decision and order of July 19, 1976 stated:

"You are entitled to judicial review of the Final Decision and

Order pursuant to and in accordance with the provisions of

section 82-4216, R.C.M. 1947." On August 11, 1976, the Department

responded to inquiries about possible rehearing by issuing a

detailed time schedule for petitions, briefing and argument.

Gate City participated in opposing the petitions for rehearing

-6-

and did not raise the jurisdictional issue cited here. Its position at that time was stated in its brief in opposition to rehearing as follows: "While section 82-4216, R.C.M. 1947, indicates that a rehearing may be requested, we submit that it is within the sound discretion of the agency decision-maker, in this instance the Director of the Department, as to whether or not to grant any such rehearing." It seems Gate City interpreted section 82-4216(2)(a) as creating a right to petition for rehearing (as did opponents and the Department). Given this factual matrix and the language of section 82-4216(2)(a), the District Court did not err in concluding that the opponents' petitions for judicial review were timely.

Under issue two, Gate City contends opponents are estopped from challenging the constitutionality of section 7-113.2 for their failure to raise the issue when it first came before this Court in Gate City v. Pitts, supra. Although not mentioned, Gate City is apparently referring to the doctrine of res judicata by which all questions that might have been litigated under the issues formed (as well as those actually adjudged) in a prior appeal must be taken as at rest forever. 5B C.J.S. Appeal and Error §1822; Phalen v. Rilley (1970), 156 Mont. 91, 475 P.2d 998. Here, it is important to bear in mind the nature and scope of proceedings leading to this and the prior appeal. The 1972 proposed merger was denied on the basis of an Attorney General's opinion that foreign savings and loan associations are prohibited from merging with domestic associations. Gate City sought declaratory judgment in District Court for construction of section 7-113(22), R.C.M. 1947, in light of their application and the Attorney General's opinion. It was the District Court's decision, reversing the Department's ruling, that was appealed by the Director and joined in by the opponents. On the appeal, the scope of review was limited to correction of errors committed by

-7-

the District Court (See, section 93-8907, R.C.M. 1947, now section 27-8-312 MCA, and Rule 2, Mont.R.App.Civ.P.), and Gate City framed the issue. That issue was the scope of section 7-113(22), not its implementation in a particular case.

Constitutional issues should generally be raised at the earliest opportunity. Johnson v. Doran (1975), 167 Mont. 501, 511, 540 P.2d 306, 311. Here, the earliest opportunity was in 1975, when the Department first implemented the provision in the manner giving rise to the constitutional challenge.

Gate City also argues that opponents are estopped from questioning the constitutionality of section 7-113.2 by actively supporting passage of the statute during the 1977 legislative session. The 1977 amendment to section 7-113.2 had no bearing on the constitutionality of that portion of the provision granting the Department power to approve or disapprove applications for merger. As already indicated, section 7-113.2, enacted in 1977, only changed section 7-113(22) to the extent that it restricted applications for merger to domestic savings and loan associations. There is nothing inconsistent in opponents' support of a statutory amendment precluding merger by foreign savings and loan associations and the present constitutional challenge.

The dispositive issue in this case is whether section 7-113.2, R.C.M. 1947, now section 32-2-231 MCA, contains an unconstitutional delegation of legislative power. The central theme of Gate City's and Fidelity's argument against finding section 7-113.2 an unconstitutional delegation of legislative power is that the trend is away from requiring that statutory standards or guides be specified and toward finding the establishment of procedural safeguards sufficient for constitutional purposes. While this may be the trend under federal law and in some states, it is not Montana's position.

-8-

All the cases dealing with the nondelegation doctrine in Montana have done so with respect to the Montana Constitution. Article III, section 1, of the 1972 Montana Constitution (formerly Article IV, section 1, 1889 Montana Constitution) specifically states:

> ". . . Separation of powers. The power of the government of this state is divided into three distinct branches--legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Two recent cases clarify what is and is not an overly broad delegation of legislative power in Montana. In Douglas v. Judge (1977), ____ Mont. _____, 568 P.2d 530, 34 St.Rep. 975, a statute authorizing the Department of Natural Resources to make loans to farmers and ranchers who proposed "worthwhile" renewable resource development programs was held to be insufficient under the test set out in Bacus v. Lake County (1960), 138 Mont. 69, 354 P.2d 1056. The Court articulated the test by quoting the following excerpt from Bacus:

> "In the case of State v. Stark, 100 Mont. 365, 371, 52 P.2d 890, 892, this court has stated:
>
> "'Delegation of power to determine who are within the operation of the law is not a delegation of legislative power.. . . But it is essential that the Legislature shall fix some standard by which the officer or board to whom the power is delegated may be governed, and not left to be controlled by caprice.'
>
> "We agree with this statement of the law and go further by saying that the standard must not be so broad that the officer or board will have unascertainable limits within which to act." Douglas v. Judge, 568 P.2d at 534 (quoting Bacus v. Lake County, 354 P.2d at 1062.)

In State ex rel. Department of Health and Environmental Sciences v. Lincoln County (1978), _____ Mont. _____, 584 P.2d 1293, 35 St.Rep. 1402, the Clean Air Act, which authorized the Department of Health and Environmental Sciences to establish limits

-9-

on pollutant emissions and to prohibit facilities causing or contributing to air pollution, was held <u>not</u> to be an unconstitutional delegation of legislative power. This Court stated: "While the powers of the Board are expressed in broad and general language, they necessarily must be as air pollution control is an emerging field of environmental protection for which detailed and precise standards have not yet been fully developed." State Dept. of Health and Environmental Sciences v. Lincoln County, 584 P.2d at 1296.

The instant case presents a delegation of legislative power that provides no standards or guidelines either expressed or otherwise ascertainable. There is nothing in the statute "to enable the agency to know its rights and obligations." Huber v. Groff (1976), 171 Mont. 442, 457, 558 P.2d 1124, 1132 (quoting Milk Control Bd. v. Rehberg (1962), 141 Mont. 149, 161, 376 P.2d 508, 515.)

Gate City attempts to characterize the statute as within the qualification enunciated in Altop v. City of Billings (1927), 79 Mont. 25, 35, 255 P. 11, 14:

> ". . . that where it is impracticable to lay
> down a definite or all-comprehensive rule, or
> where the ordinance relates to the administration
> of a police regulation and is necessary to protect
> the general welfare, morals and safety of the pub-
> lic, it is not essential to the validity of the
> ordinance that it prescribe <u>all the conditions</u>
> upon which such license shall be granted or refused."
> (Emphasis added.)

However, the statute in the instant case provides absolutely no standards, guides or conditions.

Gate City also argues that the ascertainable standards are that the merger be made "upon terms agreed upon by a majority vote of the respective board of directors, and ratified by a two-thirds vote" of the shareholders (section 7-113.2). This contention ignores the clear meaning of the statute. The majority vote ratification requirement and the approval of the Department requirement are obviously independent prerequisites for merger.

Finally, Gate City urges that any constitutional infirmity in the statute was cured by the Department's supplying appropriate standards to govern the hearing. Relying on S.E.C. v. Chenery Corp. (1947), 332 U.S. 194, 91 L.Ed. 1995, 67 S.Ct. 1575, Gate City argues that in unforseeable situations involving a statutory delegation of legislative power, determination on an ad hoc or case-by-case basis is appropriate.

In Chenery, the contention was that the agency could not apply a general standard it had formulated for the first time in that proceeding, but instead, must promulgate new standards through its rulemaking procedures. See, N.L.R.B. v. Bell Aerospace Co. (1974), 416 U.S. 267, 292, 40 L.Ed.2d 134, 153, 94 S.Ct. 1757, 1770. Thus, Chenery more closely resembles Altop v. City of Billings, supra, where at least some standards were provided by the legislature. Here, however, we find no statutory standards or guidelines from which the Department could extrapolate new ones. Indeed, the preliminary prehearing conference report shows that the opponents desired ad hoc formulation of standards sufficient to apprise them of the relevant issues before the hearing. The only standard announced was "public interest." It was only after the hearing, when the Department issued its findings and conclusions that the substantive meaning of that term was clarified.

Section 7-113.2, R.C.M. 1947, now section 32-2-231 MCA, contains an overly-broad delegation of legislative power and is hereby declared unconstitutional.

The judgment of the District Court is affirmed.

_Daniel J. Shea_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_John C. Sheehy_
Justices

-11-