PARKER PARKER *v*. IKE ALLEN LAWS, JR.

5-5372                                    460 S. W. 2d 337

Opinion delivered December 14, 1970

*Williams & Gardner, Irwin, Street & Braden* and *James K. Young,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

GEORGE ROSE SMITH, Justice. This is a taxpayer's suit brought by the appellant to require the appellee to account for some $7,000 in assertedly illegal fees received by the appellee, as deputy prosecuting attorney, during a period beginning in 1963 and ending in 1969. The special chancellor dismissed the suit on the ground that the chancery court had no authority to review the actions of the circuit judge, at whose direction the fees were paid.

The facts, except for some details not yet fully developed, are not in dispute. The fees in question stem from a practice that has existed in the Fifth Judicial District, embracing five counties, by which defendants in criminal cases have been required by the circuit judge to make certain cash payments as a condition in some instances to obtaining suspended sentences and in others to obtaining a dismissal of the charges.

This practice, which we find to be indefensible, was apparently initiated in 1963 by Circuit Judge Wiley Bean. Judge Bean fixed the required payment at $37.50 in each case, which was divided in the ratio of $25 to the deputy prosecuting attorney, $10 to the sheriff, and $2.50 to the circuit clerk. When Judge Russell Roberts became the circuit judge he first increased the payment to $100, of which the deputy prosecutor received $50, the sheriff $20, the circuit clerk $20, and the court reporter $10. Later on Judge Roberts increased the payment to the present figure of $120, of which the deputy prosecutor receives $50, the sheriff $25, the clerk $25, and the reporter $20. In the case at bar only the fees paid to the deputy prosecutor are in issue.

In the court below the special chancellor was in error in dismissing the suit for want of jurisdiction. The case does not involve a review of circuit court judgments entered in the ordinary course of contested litigation. Instead, it involves the validity of an administrative practice by which sums are exacted from persons accused of criminal offenses and are then paid over in part to the deputy prosecutor. It is firmly established

under our Constitution that unlawful payments of public funds to public officers constitute illegal exactions that may be recovered in a taxpayer's suit such as this one. Ark. Const., Art. 16, § 13; *Sitton* v. *Burnett,* 216 Ark. 574, 226 S. W. 2d 544 (1960); *Rose* v. *Brickhouse,* 182 Ark. 1105, 34 S. W. 2d 472 (1931). It is immaterial that there may be an adequate remedy at law, for the Constitution confers upon the taxpayer a cause of action in chancery. *Samples* v. *Grady,* 207 Ark. 724, 182 S. W. 2d 875 (1944). In fact, even the legislature cannot take away the taxpayer's equitable remedy. *McCarroll* v. *Gregory-Robinson-Speas,* 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977 (1939).

The fees lawfully payable to public officers are fixed by statute, as they should be. The statute unmistakably declares that "the deputy prosecuting attorney shall not be entitled to fees for the prosecution of felony cases." Ark. Stat. Ann. § 24-121 (Repl. 1962). The same section provides that the deputy prosecutor, in misdemeanor cases, shall receive the fees provided by law for the prosecution of such cases. That fee is ordinarily $10 for each conviction, but in gambling cases the allowance is $25. Ark. Stat. Ann. § 12-1707 (Repl. 1968). The appellee was accordingly entitled to the appropriate statutory fee for convictions in cases that began as misdemeanor charges or that were reduced to that level.

Judge Roberts, who testified at the trial below, relied upon his statutory power to fix the terms of a suspended sentence as authority for the exaction of the cash payments from accused persons. The statute in question provides that the court may suspend the sentence and place the defendant on probation "for such period and upon such terms and conditions as the court deems best." Ark. Stat. Ann. § 43-2331 (Supp. 1969).

There are two short answers to the theory, argued here in the appellee's brief, that the statute confers the suggested power upon the circuit court. First, the legislature obviously was not attempting to delegate to the circuit judge the power to fix the fees of court officials

in criminal cases. Secondly, the cash payments were clearly and grossly improper if viewed as a term or condition of a suspended sentence. The amount of the payment was fixed in advance and therefore could not possibly have had the slightest relationship to the many factors that are rightly to be considered in determining whether the best interests of society and of the accused call for a suspension of the sentence. Judge Roberts's own testimony leaves no possible doubt about the procedure that was followed:

> Q. Judge Roberts, what happened in cases in which there was a plea of guilty entered and the man was sentenced? What costs or fees were assessed against the man?
>
> A. Who entered a plea of guilty?
>
> Q. Yes, sir, and you sentenced him to the penitentiary?
>
> A. There were none assessed.
>
> Q. There were none assessed?
>
> A. Right.
>
> Q. How about in the cases where they were told that a suspended sentence would be given? Did I understand you to say that was conditioned upon the payment of those fees?
>
> A. Yes, sir.
>
> Q. And in the event they failed to pay the fee they would either stand trial or be sentenced to the penitentiary?
>
> A. Yes, sir.

Moreover, the appellee testified that he had received at least $1,383.33 as fees in cases in which the charge

was dismissed upon payment of the assessment. In such instances not only was there no sentence being suspended, but also the exaction was contrary to the rule of law stated in *Thomas* v. *State*, 243 Ark. 147, 418 S. W. 2d 792 (1967), to the effect that an order assessing court costs against the defendant upon dismissal of the indictment is void and a denial of due process of law.

Lest it be thought that we have disregarded statements of counsel, we point out that in the briefs and especially in the oral arguments counsel on both sides have disclaimed any intention of questioning the "legality" of the circuit court practice now in issue. We cannot accept that disclaimer. In suits such as this one, where the plaintiff represents the public at large in a representative capacity, he cannot be permitted to nullify the rights of the public by an imprudent stipulation. *Pafford* v. *Hall*, 217 Ark. 734, 233 S. W. 2d 72 (1950). We are unwilling to place the rights of the public in possible jeopardy by acquiescing in the supposed legality of the circuit court order.

The appellee pleaded, and asserts here, the defense of limitations with respect to fees received by him more than three years before the institution of this suit. In answer to that contention the appellant cites *Brewer* v. *Hawkins*, 241 Ark. 460, 408 S. W. 2d 492 (1966), where we sustained the sufficiency of a complaint asserting a fraudulent concealment of the misuse of public money. In the case at hand, however, we perceive no such concealment. The unlawful payments were openly made to the circuit clerk, who disbursed the money by check. The practice was certainly known to the lawyers in the district; in fact, it was a resolution of the Pope County-Yell County Bar Association that led to the filing of this representative suit. We are compelled to conclude that the plea of limitations with respect to the older payments is well taken.

The only issue that has given us any difficulty is that of directing the right procedure on remand. The appellee is not entitled to retain the illegal fees. The

money should properly be returned to the accused persons who paid it, the payments not being voluntary in the circumstances. *Williford v. Eason,* 110 Ark. 303, 161 S. W. 498 (1913). Any amounts that prove to be unclaimed would normally go to the county, under the principles well stated in *Yuma County v. Wisener,* 45 Ariz. 475, 46 P. 2d 115 (1935):

> "There can be no question that if defendant by word or deed caused applicants for a marriage license to believe that in order to obtain such license the law required that the $2.50 in question be collected by him as clerk of the court, that he was securing such money under color of office, as the words are generally understood, and it is the usual rule that where a public officer obtains money under color of office, which he had no legal right to collect, that he is not permitted in a suit to recover such sums, either from himself, or his bondsmen, to contend that the state has no right to recover the money from him because it had not authorized him to collect it from the citizens whom he had deceived in regard to the law. *City of Philipsburg v. Dengenhart et al,* 30 Mont. 299, 76 P. 694; *State v. Porter,* 69 Neb. 203, 95 N. W. 769, 771; *Kern County v. Fay et al,* 131 Cal. 547, 63 P. 857; *People v. Hamilton,* 103 Cal. 488, 37 P. 627; *People v. Van Ness et al,* 79 Cal. 84, 21 P. 554, 12 Am. St. Rep. 134."

Ordinarily we would simply remand the case with directions that the amount of the appellee's restitution be determined and that the money be paid over to the county, subject to the claims of the persons entitled to it. There is, however, the possibility that the funds might be expended for county purposes within the fiscal year, making it impossible for the claimants to assert their rights effectively. To avoid that possible injustice, we direct that the sums be retained in the registry of the chancery court, as in the case of a bill of interpleader, until the rightful owners have had a reasonable notice and an opportunity to assert their claims. Any unclaimed balance will then be paid over to the county. In utilizing

the equitable principles of interpleader we are merely following the settled rule by which a court of chancery devises a remedy to fit the need. *Renn v. Renn,* 207 Ark. 147, 179 S. W. 2d 657 (1944).

Reversed.

HARRIS, C. J. and BYRD, J., concur.

CARLETON HARRIS, Chief Justice, concurring. I cannot refrain from adding an additional word concerning the practice which this court is condemning and nullifying in this litigation. While I cannot conceive of this procedure, or similar procedures, being followed by other courts, I do hope that every judge and prosecuting attorney will read the opinions with care.

The imposition of costs, for the benefit of prosecuting officials, not only unauthorized by statute, but to the contrary, clearly in conflict with the statutes, is manifestly illegal; not only that, but to condition a suspended sentence, or a dismissal of the case, upon the payment of these costs by a defendant, audaciously offends the sense of justice.

CONLEY BYRD, Justice, concurring in part. The charging and receiving of excessive fees by any officer is defined by Ark. Stat. Ann. § 12-1738 (Repl. 1968), as EXTORTION. Ark. Stat. Ann. § 41-3922 (Repl. 1964), makes it a felony for one to receive or to aid and abet in the receipt of fees belonging to the public for the purpose of converting them to one's own use and benefit.

Our constitution provides:

"Art. 16, § 3. *Making profit out of or misusing public funds—Penalty.*—The making of profit out of public moneys, or using the same for any purpose not authorized by law, by any officer of the

State or member or officer of the General Assembly, shall be punishable as may be provided by law; but part of such punishment shall be disqualification to hold office in this State for a period of five years.

Art. 16, § 4. *Salaries and fees of state officers.*— The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law."

In *Thomas* v. *State,* 243 Ark. 147, 418 S. W. 2d 792, on October 2, 1967, we pointed out that the Circuit Court of Conway County, which was presided over by the same judge here involved, exceeded its authority in assessing court costs upon the dismissal of a charge. The record here shows that appellee Laws received substantial fees in 1968 and 1969 where costs were assessed upon dismissal of criminal charges.

The superintending control given this court over all inferior courts by Art. 7, § 4 of the Constitution is limited by its very phraseology to the relief accorded to a litigant on a case by case review—matters of discipline are left to the General Assembly under the article on impeachment.

My only difference with the majority goes to the remedy provided to persons who paid the costs. It is my opinion that Ark. Stat. Ann. § 27-2320 (Repl. 1962), provides an ample remedy for persons aggrieved by the overassessment of court costs. That statute provides:

"Any person aggrieved by the taxation of any bill of costs, may, upon application, have the same retaxed by the court in which the action or proceeding was had, and in such retaxation, all errors shall

be corrected by the court; and if the party aggrieved shall have paid any unlawful charge by reason of the first taxation, the clerk shall forfeit all his fees, and shall also pay to the party aggrieved the whole amount which he may have paid by reason of allowing such unlawful charge."