Cite as 2022 Ark. App. 105

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-20-750

| | |
|---|---|
| CHRISTOPHER MILES AND ALL OTHER SIMILARLY SITUATED PERSONS <br><br> APPELLANTS <br><br> V. <br><br><br> CRAIGHEAD COUNTY, ARKANSAS; AND JACK MCCANN, CRAIGHEAD COUNTY SHERIFF <br><br> APPELLEES | Opinion Delivered March 2, 2022 <br><br> APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JCV-12-820] <br><br><br> HONORABLE DAVID N. LASER, JUDGE <br><br> REVERSED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Christopher Miles filed an illegal-exaction case on his behalf and on the behalf of other similarly situated persons on December 8, 2012, against Craighead County and the Craighead County Sheriff for payment of certain costs and fees that were assessed and collected in criminal cases but not authorized by law. The Craighead County Circuit Court refused to hold the assessment of the subject fees constituted an illegal exaction, that the fees and costs paid were made voluntarily, and that refunds were not available, and it dismissed the case with prejudice. From that order comes this appeal. We hold that the assessment and collection of fees and costs not authorized by law does constitute an illegal exaction and that the fees were not voluntarily paid. Therefore, we reverse and remand.

On October 1, 2010, Mr. Miles was stopped by the Craighead County Sheriff's Department on a traffic offense and charged with possession of a controlled substance—methamphetamine, possession of drug paraphernalia with intent to use, driving while license canceled-suspended or revoked, and running a stop sign. He entered a plea agreement for a thirty-six-month probated sentence and was ordered to pay costs and fines in the total amount of $731.

On December 8, 2012, Mr. Miles filed a complaint on his behalf and on the behalf of similarly situated persons, alleging that the payment of certain costs and fees above the $150 allowed by statute was an illegal exaction. On July 21, 2016, the circuit court issued an initial order enjoining the prospective imposition of two fees: an $86 sheriff's fee and a $100 fee for lower-court costs. It also declared that the fees were illegal exactions. The circuit court stated that it would have another hearing to determine class-action status or whether class-action certification was needed in an illegal-exaction case.

On February 8, 2017, the circuit court entered an order reiterating that this was an illegal-exaction case and holding that fees paid before the filing of the complaint were "voluntary," and a refund of the fees was not available. Fees paid following the filing of the complaint in this case were presumed to be "involuntary," and persons who paid them might potentially be due a refund. Whether individuals' refunds were available depended on the circumstances surrounding the payment as well as whether the individual wished to seek a refund. Notice was ordered to be issued informing potential claimants of the nature of the proceeding and that they might be entitled to a refund of the fee paid.

On May 15, 2018, the circuit court issued an "Order on Proposed Plan to Distribute Monies," which included a provision ordering Craighead County to provide addresses and amounts paid and ordering Mr. Miles's counsel to send the notices by certified mail, return receipt requested. Mr. Miles filed a motion requesting that Craighead County pay the cost of mailing the notices. In response, on August 1, 2018, the circuit court entered an order abating the May 15 order. On September 11, 2019, Mr. Miles filed a motion for a final order claiming that the cost of mailing the notices would be between $35,000 and $60,000, and Mr. Miles did not want to incur the expense because Craighead County had claimed its intention to file an appeal. Miles asked the court to delay any notice requirements until a final, appealable order had been entered and all appeals exhausted.

On May 4, 2020, the circuit court issued its final order, holding (1) that the circuit court had jurisdiction and venue was proper; (1) that the only other case, *Parker v. Laws*, *infra*, never imposed illegal-exaction liability against a party that played no part in imposing the challenged levy; (3) that *Parker* is readily distinguishable from the facts of this case; (4) that, per long-established supreme court precedent and Arkansas statute, the only appropriate mechanism to challenge illegal costs was through a motion to retax costs in the individual criminal case; (5) that, per long-established supreme court precedent, the only appropriate method for challenging any component of a criminal conviction is through a direct criminal appeal; (6) that, per long-established Arkansas and U.S. Supreme Court precedent, collateral attacks on criminal convictions by way of a civil lawsuit are prohibited; (7) that because no proof of any lack of voluntariness in payment of the subject fees had been proffered, refunds

3

of any fees were not warranted in any event; and (8) that since imposition of the fees had already been enjoined, no further injunctions were necessary.  The court dismissed the case with prejudice.

Mr. Miles argues that the circuit court erred in its refusal to find an illegal-exaction case. We agree. An illegal exaction is any exaction that is either not authorized by law or is contrary to law. *Robinson v. Villines*, 2009 Ark. 632, at 6, 362 S.W.3d 870, 874. Two types of illegal-exaction cases can arise: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent; and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 370, 201 S.W.3d 375, 379 (2005).

Here, the public funds were generated from criminal fees and costs of court that were in excess of those authorized by statute, which constitutes an illegal tax. In refusing to hold that this matter was an illegal-exaction case, the circuit court stated in its May 4, 2020 order that "the finding that the fees challenged in this case were beyond the statutory authority is not the end of the analysis."  The circuit court went on to cite Mr. Miles's failure to sue any party involved in the levy of the subject fees. However, the circuit court found in its July 21, 2016 order that the fees were not authorized by statute, that the sheriff did not receive the fee that was titled "sheriff fee," and the funds generated by the "sheriff fee" were placed in the Craighead County general fund.  It is clear that Craighead County was a recipient of the fees generated, was the party expending the funds, and therefore was a properly named party.

We find this to be an illegal-exaction case, the proper party has been named, and the circuit court's dismissal of the illegal-exaction case was in error.

Mr. Miles next argues that the fees and costs paid were not voluntary. We agree. Voluntary fees are not subject to an illegal-exaction suit. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998). When payments are made involuntarily, the money should be returned to the accused persons who paid. *Parker v. Laws*, 249 Ark. 632, 637–38, 460 S.W.2d 337, 340 (1970) (citing *Williford v. Eason*, 110 Ark. 303, 161 S.W. 498 (1913)). An individual who is under arrest and pays an illegal fine or costs under the compulsion of that arrest is entitled to recover it in an action instituted for that purpose. *Williford*, 110 Ark. at 303, 161 S.W. at 499. We do not agree with Craighead County's argument that Mr. Miles negotiated the fees and costs of court when he negotiated the terms of his plea agreement. A criminal defendant wishing to accept a plea agreement is faced with either paying the fees assessed by the court or with a trial and the possibility of a much harsher punishment, including jail or prison confinement. Those criminal defendants who were convicted after trial were assessed the same fees. The supreme court has held that payments can be rendered involuntary when made under coercion or some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or property from which the latter has not reasonable means of immediate relief except by making payment. *Weiss v. Chavers*, 357 Ark. 607, 184 S.W.3d 437 (2004). In Craighead County, those criminal defendants who accepted a plea agreement and were ordered to pay illegal fees paid said fees under coercion because the alternative they faced was the possible loss of liberty. Likewise, those convicted without

a plea agreement did not pay fees voluntarily nor did they negotiate for the voluntary payment of fees. We do not find the fees taxed and collected by the circuit court and turned over to Craighead County voluntarily paid.

Finally, the circuit court held that Mr. Miles's illegal-exaction suit was an unallowable collateral attack on his underlying criminal sentence. The circuit court stated that Mr. Miles should have directly appealed his criminal conviction in order to obtain relief or filed a motion to retax the illegal costs. We disagree. The general rule is that a defendant who does not appeal a criminal conviction must be barred from collaterally attacking a judgment. *Camp v. State*, 364 Ark. 459, 221 S.W.3d 365 (2006). Although Mr. Miles and similarly situated persons had other remedies available to them, such as filing a Rule 37 motion or a motion to retax the illegal costs and fees, they also have a remedy in equity. These remedies are not mutually exclusive. "[U]nlawful payments of public funds to public officers constitute illegal exactions that may be recovered in a taxpayer's suit. . . . It is immaterial that there may be an adequate remedy at law, for the Constitution confers upon the taxpayer a cause of action in chancery. In fact, even the legislature cannot take away the taxpayer's equitable remedy." *Parker*, 249 Ark. at 635, 460 S.W.2d at 339 (citations omitted). An illegal-exaction suit is a remedy conferred by the Arkansas Constitution and cannot be taken away. Under article 16, section 13 of the Arkansas Constitution, "[a]ny citizen of any county, city, or town may institute suit, on behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." The illegal fees, including the $86 sheriff's fee and the $100 fee for lower-court costs, were illegal exactions that any

citizen of the county, on behalf of himself or all others interested, may institute to protect the citizens of Craighead County from illegal exactions. We reverse the circuit court's holding that this suit was an unallowable collateral attack on a criminal conviction.

Reversed.

GLADWIN, VIRDEN, and WHITEAKER, JJ., agree.

BROWN and ABRAMSON, JJ., dissent.

**WAYMOND M. BROWN, Judge, dissenting**. Appellant Christopher Miles, on behalf of himself and all other similarly situated persons, appeals the May 6, 2020 order of the Craighead County Circuit Court dismissing an illegal-exaction complaint against Craighead County, Arkansas; and Jack McCann, Craighead County Sheriff, with prejudice. Appellant contends that the circuit court erred by finding that no refunds could be awarded in this case and dismissing the case with prejudice. I would affirm.

The facts of this case are not in dispute. Appellant Christopher Miles was stopped for a traffic violation on October 1, 2010, by a Craighead County sheriff. As a result of the stop, appellant was arrested and charged with two Class C felonies: possession of a controlled substance—methamphetamine; and possession of drug paraphernalia with intent to use. He was also charged with the unclassified misdemeanors of driving while license canceled, suspended, or revoked; and running a stop sign. Appellant subsequently entered a negotiated plea of guilty to possession of a controlled substance—methamphetamine, and the other charges were nolle prossed. Appellant received a suspended sentence of three years and was ordered to pay costs and fines in the amount of $731 at the rate of $50 a month.

7

Court costs in the amount of $236 were among the costs appellant was ordered to pay, and it included a clerk's fee of $150 and a sheriff's cost of $86.

On December 8, 2012, appellant filed an illegal-exaction complaint on behalf of himself and all other similarly situated persons against Craighead County, Arkansas; and Jack McCann, Craighead County Sheriff, alleging that Craighead County and McCann had collected court costs over the $150 statutory allowable amount. According to the complaint, defendants were charged an additional $86 sheriff fee, resulting in court costs of $236. It also alleged that persons appealing from district court were charged a lower-court fee of $100. The complaint alleged that the collection of these additional costs amounted to illegal exactions and prayed for the following:

> [T]hat this court declare the actions of the Defendants in levying and collecting court costs in excess of $150.00 to be illegal exactions and illegal assessments of court costs against the Plaintiffs and all class members; that the Court mandate, enjoin, and direct Defendants to re-tax the costs assessed against all class members in excess of $150.00, and to correct any errors of the illegal assessment; that the Court mandate, enjoin, and direct Defendants from levying or assessing any further or future charges or costs in excess of the $150.00 as authorized by statute; that all Defendants be ordered to account for any of such funds levied by, paid to, or collected by them in excess of the $150.00; that all Defendants pay any such funds in the registry of the Court; that Plaintiffs and all class members have judgments against all Defendants for all illegal charges levies [sic] or paid; that Plaintiffs recover attorney fees, costs, and expenses of litigation; that Plaintiff be able to pursue this action on behalf of all individual's [sic] that have been charges [sic] and paid this illegal exaction or costs; and for any and all other proper legal and equitable relief. Defendants filed an answer on January 15, 2013, denying the material allegations of the complaint and asserted numerous affirmative defenses.

8

Appellant filed a motion for summary judgment on January 15, 2016. According to appellant, the facts and issues presented in this suit were directly in line with *Parker v. Laws*,[1] and no genuine issue of material fact existed. Appellees filed a brief in response to appellant's summary-judgment motion and a countermotion for summary judgment on February 18. In their motion, appellees stated that appellant's suit should be dismissed because it constituted an impermissible collateral attack on his conviction. They also argued that Miles agreed to pay the court costs as part of his negotiated plea, which he voluntarily entered into. Appellees asked the circuit court to grant summary judgment in their favor. Appellant filed a reply in support of his motion and a response to appellees' motion on March 29. Appellant denied that he was collaterally attacking his sentence or that the payment was voluntarily made.

The circuit court held a hearing on June 29. At the hearing, everyone seemed to agree that all the fees ($86 sheriff costs and $100 lower-court fees) were sent back to Craighead County and placed in the county fund and that none were retained by the sheriff. The circuit court entered an order on July 21, finding that the fees in question were illegal exactions and ordered the circuit court to "cease and desist from charging any fees or costs over and above the $150.00 that is authorized by statute." The circuit court then stated that its ruling was limited to Miles and that it intended to hold a separate hearing to determine

---

[1]249 Ark. 632, 460 S.W.2d 337 (1970).

who the similarly situated persons were. It asked both sides to brief the court on whether class certification was needed in this type of suit.

Appellant filed a brief on September 16, contending that an illegal-exaction claim by its nature is a class action and asked the court to declare "this class certified as a matter and law[.]" Appellees also filed a brief on September 16 arguing why the circuit court should dismiss appellant's claim, including claims that the suit was not a proper illegal-exaction case, not a proper Rule 23 class-action case, and not a proper stand-alone case. They also contended that *Parker* was inapposite and possibly bad law and stated that the statute of limitations should apply to limit the scope of the case. Appellees filed a response to appellant's brief on September 23, seeming to reiterate the arguments it had made in its own brief. Appellant filed a reply on September 23, contending that appellees were trying to reargue issues. Appellant also maintained that *Parker* was directly on point with the facts and issues of this case. Appellant filed another brief on November 14, contending that not only the fees paid after the lawsuit commenced were involuntary, but payments made by coercion were also involuntary. Appellant argued that the fees in this case were coercive because one fee "is imposed as part of a criminal plea or sentence, which makes it coercive by definition. It is a criminal punishment. The second fee is a condition placed on the ability to appeal[,]" and the person subjected to the fee had to pay it or forgo the right to appeal, making that fee coercive by definition also. Appellees filed a response on November 28, contending that appellant agreed to and subsequently paid the fees and fines voluntarily without an appeal, without a move for retaxation of the costs, or even an objection on the

10

record, which led to the proceeds being spent by the county in the ordinary course. Appellees stated that Arkansas law does not permit a refund under these facts. Appellees further argued that since the fees and costs were part of appellant's criminal conviction, appellant could not collaterally challenge them in an illegal-exaction case or any other civil matter. Additionally, appellees stated that *Parker* is inapposite to the facts of this case. Appellees filed the affidavit of Terry McNatt, the elected Treasurer of Craighead County on November 29. The affidavit stated that Craighead County is "constrained from deficit spending, so county revenues are generally/roughly spent in their entirety in each calendar year." He further stated that, to the best of his knowledge and based on the review of Craighead County's financial records, "all proceeds from the fees/fines challenged in this lawsuit, were, upon receipt transferred into the County General Fund, where they are spent in the ordinary course."

The circuit court held hearings on October 18 and December 16. The circuit court issued an order on February 8, 2017, finding that payments of the illegal costs and fees prior to the filing of the current suit were deemed voluntary and not recoverable. However, it found that payments made subsequent to this action were "presumed to be involuntary, and those who paid them may potentially be due a refund. Whether individual refunds are available may depend on the circumstances surrounding the payments, as well as whether the individual wishes to seek a refund." The circuit court also found that proof may be needed to determine whether specific refunds would be given. The order required that notice be given to individuals with potential claims and that they would have sixty days to

make a claim, which the court found was a "preliminary step in determining whether refunds will be paid[.]" The order also required that the notice be published for three days in a newspaper of general circulation in Craighead County.

Appellant filed a motion to allow a proposed plan to distribute the money on January 9, 2018. Appellees filed a response on January 24. Appellees filed a supplement to their bench brief on March 7, 2018, again seeking to have the case dismissed. Appellant filed a response to the supplement on March 15, asking the court to deny appellees' request for dismissal. The circuit court held a hearing on appellant's motion to allow a proposed plan of distribution on May 15. It entered an order for the proposed plan that same day. Appellant filed a motion on June 20 for appellees to pay the expenses associated with notifying the affected individuals. Appellees filed a response on July 5 asking that the motion be denied. The circuit court entered an order of abatement of notice to claimants on August 1 based on "the parties oral motion for the parties to abate the order that was file marked on May 15, 2018 until further orders of the court[.]"

Appellant filed a motion for a final order and other relief on September 11, 2019. The circuit court held a hearing on the motion on December 5. The circuit court asked appellant to prepare an order based on how appellant wanted the circuit court to rule. It then said that appellees would be able to prepare a rebuttal order and that the circuit court would decide following receipt of the draft orders. The circuit court subsequently adopted one of appellees' draft orders as its own. The circuit court filed the order on May 6, 2020, dismissing appellant's case with prejudice. The order stated in pertinent part:

2. The Plaintiff in this case, Christopher Miles, entered into a negotiated plea at the conclusion of his criminal case. His Judgment and Commitment Order included two fees that the Court has previously found were beyond and/or in excess of any statutory authority.

3. The finding that the fees challenged in this case were beyond the statutory authority is not the end of the analysis, particularly where the Plaintiff has sued a governmental entity, Craighead County, that had no part in the levy of the challenged fees. Only one other case, to the Court's knowledge and based on the citations and arguments of the parties, *Parker v. Laws*, 249 Ark, 632, 460 S.W.2d 337 (1970), has ever imposed illegal exaction liability on an individual or entity that did not impose the challenged exaction, as here. That case is distinguishable from this matter, however, because the prosecutor who was sued in *Parker* was both the recipient of the proceeds of the fee and a participant in the levy of the fee, as the dissent expressly accused him of "extortion" in the case. There are no such facts here and the Plaintiff had not sued the State or any of the Circuit Judges.

4. The Arkansas Supreme Court has held that the *only* appropriate mechanism for remediation of the assessment of illegal costs is a motion for retaxation of costs in the underlying criminal case: "*It is contended by counsel for appellant that illegal costs were adjudged. If so, the [only] proper remedy is to move to retax.*" *Spore v. State*, 162 Ark. 1, 4, 257 S.W. 362, 363 (1924) (emphasis added); *see also* Ark. Code Ann. § 16-68-409.

5. Additionally, the Supreme court has held that the method for challenging a conviction, including the sentence or fine, is to take a direct appeal to circuit court, then to the appellate courts, then pursue post-conviction proceedings, if necessary. *Sasser v. State*, 338 Ark. 375, 993 S.W.2d 901 (1999).

6. Instead of moving to retax, directly appealing the unauthorized fees in his criminal case, or otherwise appealing these matters directly (e.g., Rule 37 motion, habeas corpus, etc.), the Plaintiff has elected to file this suit, collaterally attacking the challenged fees by way of an illegal exaction claim(s). This is not permissible. "The general rule is that a defendant who does not appeal a criminal conviction must be barred from collaterally attacking a judgment." *Camp v. State*, 364 Ark. 459, 221 S.W.3d 365 (2006). A separate lawsuit challenging the particulars of a conviction or sentence or fine is not permitted. *Heck v. Humphrey*, 512 U.S. 477 (1994).

7. Additionally, the Plaintiff can offer no evidence of a lack of voluntariness in his payment of the challenged fees, as they were assessed as part of a negotiated guilty plea. Accordingly, the fees were the result of an agreement between the Plaintiff and his counsel and the prosecuting attorney, subject to approval from fairness, legality, and voluntariness by the Circuit Judge. In fact, the Circuit Judge is legally bound to ensure that such negotiated pleas are voluntary by the criminal defendants, as a matter of fact. No proof has been introduced in this case to indicate that this did not occur in Plaintiff's plea situation. The Plaintiff did not appeal those fees, move for retaxation of costs, or otherwise directly object; instead, he paid the fees without protest. Since proof of a lack of voluntariness is required prior to the grant of any refund in an illegal exaction case, no refund can be awarded in this case, to the Plaintiff or any others "similarly situated."

8. The Court has previously Ordered the Circuit Judges in this Judicial District to cease and desist any further imposition of the challenged fees and there is not need for any further injunctive or declaratory relief.

Appellant timely appealed the order. This appeal followed.

Appellant contends that the circuit court erred by finding that the payments in this situation were not subject to refund. The standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all the evidence, is left with a definite and firm conviction that a mistake has been committed.[3] However, a circuit court's conclusion on a question of law is reviewed de novo and is given no deference on appeal.[4]

---

[2]*Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 268 S.W.3d 879 (2007).

[3]*Id.*

[4]*Id.*

14

Article 16, section 13 of the Arkansas Constitution grants the citizens of Arkansas standing to pursue an illegal-exaction claim.[5] An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law.[6] There are two types of illegal-exaction cases: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent; and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal.[7] Our courts have strictly adhered to the rule that if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie.[8]

Here, appellant and others similarly situated are alleging that the $86 sheriff costs and $100 lower-court fees collected in their criminal cases are illegal. The circuit court agreed that the amounts were not authorized by law or statute and ordered the district courts of Craighead County to cease and desist imposing the fees. The circuit court, however, found that refunds would not be awarded in this case. As below, appellant argues that the disposition of this case is controlled by *Parker*. In *Parker*, taxpayers sued the deputy prosecuting attorney to require the prosecuting attorney to account for some $7,000 in fees received by him. From 1963 to 1969 in the Fifth Judicial District, defendants in criminal cases were required by the circuit court to make certain cash payments as a condition of

---

[5]*Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870.

[6]*Id.*

[7]*Id.*

[8]*Id.*

15

obtaining suspended sentences or dismissal of the charges. At the onset, the fee was $37.50 of which $25 went to the prosecuting attorney, $10 went to the sheriff, and $2.50 went to the circuit clerk. By the time the lawsuit was commenced, the fee had been raised to $120, with $50 going to the prosecuting attorney, $25 going to the sheriff, $25 going to the clerk, and $20 to the reporter. The suit only challenged the fees received by the prosecuting attorney. The lower court dismissed the suit for lack of jurisdiction, and the appellants appealed. The *Parker* court held that the dismissal was in error as it did not "involve a review of circuit court judgments entered in the ordinary course of contested litigation. Instead, it involves the validity of an administrative practice by which sums are exacted from persons accused of criminal offenses and are then paid over in part to the deputy prosecutor."[9] Judge Russell Roberts testified at the lower-court hearing that no fees were assessed if someone was sentenced to prison. However, he stated that it was his understanding that if there was to be a suspended sentence, the fee would first have to be paid. He further stated that if the fee was not paid, the person would have to stand trial or be sentenced to prison. Laws testified below that he had received $1,383.33 as fees in cases in which the charge was dismissed upon payment of the required fee. The *Parker* court found that Laws was not entitled to retain the illegal fees and that the money should be returned to the persons paying the fee as the payments were not voluntary under the circumstances. Afraid that the sums would be expended for county purposes for the fiscal year if the court directed the sums to

---

[9]*Parker*, 249 Ark. at 634, 460 S.W.2d at 339.

the county, subject to claims of the affected persons, the court ordered that the funds be retained in the registry of the court as a bill of interpleader until the rightful owners could be contacted and given an opportunity to assert their claims.

Appellees argue, and I agree, that the facts in this case are distinguishable from *Parker*. In *Parker*, even though the prosecuting attorney did not levy the fee, he played an active role in the dismissal of certain criminal charges and was compensated accordingly. Here, neither the sheriff's office nor Craighead County played any role in the levying of the contested fees. The sheriff's office only collected the fees and then transferred the fees into the county's general fund. There was no allegation that either the sheriff's office or McCann benefited personally from the $86 sheriff's fee. In *Parker*, the fees had to be paid prior to a criminal charge being suspended or dismissed. Here, the fees were included in the costs assessed to appellant as part of his criminal punishment. Additionally, the *Parker* court specifically found that the action brought was a challenge to the validity of an administrative practice and did not involve a review of circuit court judgments entered in the ordinary course of contested litigation. Here, the opposite seems to be true. Appellant seems to be challenging the circuit court's judgment, which included the assessment of fees, entered against him as a result of his negotiated plea.

Appellees contend that appellant's suit is nothing more than a collateral attack on his judgment. A collateral attack is an attack on a judgment in a proceeding other than a direct

appeal.[10]  Generally, judgments are not subject to collateral attack unless they are void on the face of the record or are issued by a court lacking jurisdiction,[11] neither of which seems to be the case here.  Appellant challenges the amount of fees and costs he was assessed when he entered into a negotiated plea of guilty for an underlying felony charge.  He did not make a direct appeal of the fees and costs but instead filed an illegal-exaction case to challenge the fees.  This amounted to an impermissible collateral attack.  As such, the circuit court was correct in dismissing appellant's case with prejudice.

Had this not been an impermissible collateral attack, I would still hold that the circuit court did not clearly err by dismissing appellant's case.  The circuit court found in an earlier order that the additional fees were assessed in violation of the statute and that they amounted to illegal exactions, as it pertained to appellant.  However, the circuit court found that appellant and others similarly situated were not entitled to any refunds because appellant failed to show that the fees were paid involuntarily.  We have consistently followed the common-law rule that prohibits the recovery of voluntarily paid taxes.[12]  An exception to the voluntary-payment rule may be sustained if the payments were made under coercion.[13]  In an earlier order, the circuit court found that the taxes paid before the filing of the suit were

---

[10]*In re Guardianship of Pitts*, 2021 Ark. App. 250, 627 S.W.3d 426.

[11]*Id.*

[12]*Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995).

[13]*Id.*

18

voluntary, and those paid after the suit's commencement were presumed to be involuntary. However, in the final order, the circuit court specifically found that the appellant failed to show that he and others similarly situated did not pay the fees involuntarily. I cannot say that this was error. Appellant negotiated a plea of guilty in his criminal case, and in exchange, criminal charges were nolle prossed, he received a three-year suspended sentence, and was ordered to pay certain fines and costs. There are safeguards in place that would have required appellant to represent to the court at that time of the agreement that he voluntarily entered into the agreement and that the agreement was not a result of coercion. This would have also been the case for others similarly situated. Given these facts as presented in this case, I hold that the circuit court did not err when it found that appellant failed to prove that the payments by him and others similarly situated were not made voluntarily.

Therefore, I respectfully dissent. I am authorized to state that Judge Abramson joins in this dissent.

*Mark Rees*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Jason Owens Law Firm, P.A.*, by: *Jason E. Owens*, for appellees.